Thompson, J.
This was an action of trespass for mak *138 ing a distress as collector for a tax on the theatre in [*96] New-York, ^imposed under the act of congress. It is admitted on the part of the plaintiff that the theatre cannot be considered as a dtoelling-house in the contemplation of the law, and of course not taxable as such. But it is contended that the collector is justified by his warrant notwithstanding this, so that the plaintiff has no remedy against the officer.
Officers, acting under process from superior authority, ought in all cases to be justified by their process, where that can be done consistent with the established principles of law, and the rights of parties. That the rule is not universal as it respects ministerial officers, I think well settled.(a) The distinction that is laid down in 10 Coke’s Bep. 76, is, that where the subject matter of the suit is within the jurisdiction of the court, but the want of jurisdiction is as to the person or place, unless the want of jurisdiction appears on the process to the officer who executes it, he is not a trespasser; but where the subject matter is not within the jurisdiction of the court, there every thing done is absolutely void; the officer is a trespasser. If the present case be tested by this rule, the collector must be considered as a wrong-doer. . The theatre was not taxable as a dwelling-house. All proceedings, then, to impose the tax or collect it, must have been with out authority, and wholly void, being a subject not within the jurisdiction of the assessors. Unless the plaintiff has his remedy against the collector or the assessors, he is without redress in a court of justice, and we are driven to say here is an injury without a remedy. Admitting the assessors were liable, still this will not, upon the principles decided in the above case, excuse the collector; all are trespassers. The distinction above taken with respect to ministerial officers justifying under process appears to me analogous to the present case, and has been repeatedly *139 recognized in the English courts, in actions of trespass against their commissioners and collectors of taxes. In the case from H. Black. Bep. 72, the action was brought against the collector and commissioners jointly; and in the two cases cited from Term Hep. (a) the action was against the collector only. No question was there raised with respect to the officer’s being justified by his warrant; the sole inquiry was whether the property, for the tax of which distress had been made, was taxable; conceding that, unless it was, all the proceedings were void, and the oificer a trespasser; and the property not *being consi- [*97] dered taxable in the opinion of the court, judgment was given against the collector. So in the present case, the theatre, not being taxable as a dwelling-house, the subject matter was not within the authority of the assessors, and the imposing the tax was illegal, void, and could not afford ground of justification to the collector.
I am, therefore, of opinion, judgment ought to be for the plaintiff.
Livingston, J.
Upon no principle ought the defendant to be liable. It is made his duty, on the receipt of the list, to collect the tax, if not paid by a limited time. It was not for a subordinate officer, who was concluded by the judgment of the assessors, to question the propriety of the theatre’s being classed as a dwelling-house. Having acted under a competent authority, and paid the money over, why should he refund the plaintiff’s loss out of his own pocket, and be left to the liberality of government for his indemnity ? If a wrong has been committed, and they are disposed to correct it and do justice, it is as probable they will act on the petition of the party aggrieved by the assessment, as on that of the collector; while a collector, by being thus exposed, might be ruined by a denial to reimburse him, no other individual can be very extensively *140 injured by a like refusal. In this ease the assessors had jurisdiction over the subject, and their mistake in considering a theatre as a dwelling-house, must be regarded as an error in judgment, for which a collector ought not to be thus harassed. They might suppose that as a theatre yielded a considerable rent, it was reasonable it should be subject to as large a tax as a dwelling-house. In the cases cited from 1 H. Black. 68, and 8 Term Rep. 468, the proceedings were coram non judice. The only questions there related to the exemption of certain property altogether by the terms of the several acts of parliament. The officer’s liability to refund was not made a point in .the argument, but appears to have been submitted sub silentio; at any rate, these are recent cases, and not obligatory here. It is better, therefore, to sanction a rule suggested by the common sense and feelings of men, and which affords protection to every ministerial officer acting under persons clothed with proper authority, than to adopt the subtlety and refinement of certain modern decisions, which are calculated to deter inferior officers from a faithful and prompt [*98] discharge *of their functions, or to expose them to much vexation and expense.
It is also much in favor of the collector that the plaintiffs neglected to appeal. This being a remedy provided by the act, they ought not lightly to be permitted to elect another.
Radcliff, J.
On the trial of this cause it appeared that the plaintiffs were owners of the new theatre in the city of New York; that the same was assessed and valued as a dwelling-house, under the act of congress to provide for the valuation of lands and dwelling-houses and the enumeration of slaves within the United States, and was taxed as such, in pursuance of the act to lay and collect a direct tax within the United States. The defendant was a collector, and for non-payment distrained in a regular manner, for the tax, and justifies that he had a right so to *141 do. As a theatre merely, it was conceded not to be a dwelling-house within the intent of these acts of congress, and it does not appear that it was ever occupied as such. The assessors, therefore, had no authority to assess it as a dwelling-house, and subject it to the tax on houses of that description; nor could the collector derive from their assessment, or from any warrant which he may have possessed, an authority to demand a tax, which no one had a right to impose. The power of the assessors was special and limited, and ought to have been strictly pursued within the bounds prescribed by law, and it was incumbent on the collector to see that he acted within the scope of their authority and his own, and by exceeding it he became in the eye of the law a trespasser.
In England the same rule prevails in regard to their officers of the revenue, and particularly in the analogous case of their land tax. The cases in the English books are uniform and decisive on this point, and in none of them was there a doubt entertained whether the officer collecting the tax was liable.(a) Their acts on the subject of the land tax are numerous, and bestow on commissioners, assessors and collectors, powers equally extensive with those conferred on the officers appointed under the act of congress. They have also an appeal from the assessors to the commissioners, similar to that from *our assessors; [*99] and in the case of Harrison v. Bullock and others, reported in H. Blackstone, that appeal was made and dismissed, and the collector was still held equally liable. Indeed, I know of no cases more parallel in their circumstances, and more intimately connected in principle.
The decisions on this subject are founded on the general rule of the common law, that special powers are to be strictly observed, and that all ministerial officers concerned in the execution of them are bound to see that they are clothed with proper authority. If there be any hardship *142 in the ease, it has been experienced for ages in England, and it belongs to government to indemnify its officers when acting with good faith. Individuals ought not to suffer, and they can have no other judical remedy than the one now sought. I think it no answer to this reasoning to say that the assessors had power to assess this theatre as land, (which would subject it to a different tax,) and that, therefore, they had authority over the subject matter. Inferior officers are liable for an excessive exercise of power as well as a total want of it. If they step out of the limits assigned to them, they are equally trespassers. This is settled even in the case of magistrates executing a judical trust: although they have jurisdiction over the process as well as the person and cause, they are liable if they exceed their authority. The extent of this doctrine is not only supported by the principles of the common law, and a current of English decisions, but was adopted by this-court in the case of Percival against Jones,(a) in which we gave judgment against a magistrate for. exceeding his powers.
Whether by the just construction of the act of Congress it admitted of an appeal on the point in question to the principal assessor, I think immaterial. The omission to make that appeal, or if made, the decision of the principal assessor against it, would not alter the case, or conclude the appellant. Such decisions would still depend on the discretion of a ministerial officer only, and unless such discretion is declared to be definitive, or the nature of the subject requires it to be so considered, I deem it a maxim from which we ought not to depart, that no one shall be finally concluded in his rights, without an opportunity to be heard in a court of justice and the regular decision of a competent tribunal.
As to the question which concerns the jurisdie[*100] tian of this "court in civil cases, where the validity of an authority exercised under an act of the *143 United States is drawn in controversy, I think it cannot originally be doubted. This is simply an action of trespass, and the pleadings are in the usual form. The question under the act of Congress arises incidentally upon the evidence on the part of the defendant, and Congress, by their act establishing the judicial courts of the United States, have expressly recognized the jurisdiction of the state courts, and provided a remedy by writ of error returnable in the Supreme Court of the United States, in case the decisions of the state courts should contravene their laws.
I am, therefore, of opinion, that we possess jurisdiction that there was no authority under the act of Congress to impose or collect this tax, and that this action is maintainable against any officer who enforced it.
Kent, J.
The question submitted is, whether the plaintiffs are entitled to recover upon the facts stated.
The Act of Congress of 9th July, 1798,(a) provided for the valuation of lands, dwelling-houses, and slaves, by assessors, to be appointed by commissioners. “ Every dwelling-house above the value of one hundred dollars, and the lot” on which it was erected, not exceeding two acres, was to be valued at the" rate such dwelling-house was worth in money, “ with a due regard to situation.” “ All lands and town lots, except lots on which dwelling-houses” were erected as aforesaid, were to be valued “by the quantity at the average rate” which each lot was worth in money, “in a due relation to other lands and lots, and with reference to all advantages of soil and situation, and to all buildings and other improvements of whatever kind, except dwelling nouses aforesaid.” In making the assessments the assessors were to require from the owners or possessors of dwelling-houses, lands, or slaves, separate lists of each, and *the lists of dwelling-houses were to specify their [*101] situation, dimensions, stories, windows, materials, *144 kc. The lists of lands and lots were to specify the quantity of each tract or lot, the number, description and dimensions of all buildings thereon, except dwelling-houses aforesaid. And the assessors were themselves to make the lists for persons not prepared to exhibit the same, and where persons, on being required or notified, refused or neglected to furnish the lists, the assessors were to enter on the lands, &c., and to make the lists from the best information they could obtain. After the lists were thus collected, the assessors were to value the same in a just proportion aforesaid, and to arrange the lands, dwelling-houses and slaves mto three alphabetical lists. The principal assessor was then to give public notice in each assessment district, of the place where the lists and valuations were to be seen, and that appeals were to be received by him relative to erroneous or excessive valuations. These principal assessors were authorized to receive, hear and determine in a summary way, according to law and right, all appeals against the proceedings of the assessors: provided that the question to be determined on an appeal respecting the valuation of any lands or dwelling-houses should be whether the valuation complained of was in a just relation or proportion to other valuations in the same assessment district. The appeals were to be in writing, and were to specify the particular cause, matter or thing respecting which a decision was requested ; and to state the ground of inequality or error complained of, by reference to some other valuations in the same district: and in all cases to which reference was to be made in any appeal, the principal assessor was authorized to re-examine and equalize the valuations as should appear just and reasonable. After the expiration of the time for appeals, the principal and other assessors were to transmit to the commissioners of the district, copies of their lists and abstracts of their proceedings, and the commissioners were authorized, if manifest error or imperfection appeared in the abstracts, to require the assessors that the same be explained and corrected.
*145 These are all the parts of the law that have relation to &e assessment complained of.
By another act of Congress of the 14th July, 1798, a tax was laid and assessed upon houses, lands and slaves according *to the above valuation, and the survey- [*102] or of the revenue was to make out lists of the sums payable for every dwelling-house and tract or lot of land, distinguishing what was payable for dwelling-houses, and what for Jands, and the collectors were to be furnished with these lists, and were bound to collect the sums accordingly. In pursuance of this last act, the defendant entered and collected the sum as stated in the case.
1. Upon this case I am of opinion that the plaintiffs had a remedy provided by the act for the error alleged, and that the principal assessor, upon appeal-, was competent to redress the grievance. The authority was in general terms to receive, hear, and determine, according to law and right, all appeals against the proceedings of the assessor. The limitation 'of the assessor’s power upon appeal respecting the valuation of lands, &c., did not apply to this case, for here the appeal would not have been respecting the valuation, but respecting the error in placing the theatre, which was not a dwelling-house, on the list appropriated to dwelling-houses. And as the plaintiffs did not avail themselves of the remedy by appeal, they may be considered as having acquiesced in the proceeding of the assessors. Here is a special trust created by statute, and a special remedy provided for the correction of mistakes in the execution of it; and I incline to the opinion, that the determination of tho principal assessor upon appeal was intended by the act to be of plenary discretion, and final authority. The multifarious and minute detail of the proceedings of the assessors seems to render such a discretion absolutely necessary to the due execution of the law; (Cowp. 524; 1 Burr. 544;) for I distinguish this from those cases in the English books where the assessors and collectors of their land tax have been held trespassers. There the commissioners had no *146 authority at all over the subject matter which they included in the tax. (1 H. Bl. 68.) Here the theatre was required to be assessed by the assessors; if a dwelling-house, then as such: if not a dwelling-house, then as a lot of ground, with due regard to the improvements thereon; and, probably, the valuation would have been just the same, whether it had been placed on the one list or the other. The assessors had jurisdiction of the subject matter: they were bound to assess that building in the one view or the other, and in the exercise of that duty, it is alleged and admitted that they did not exercise their judgment duly. But [*103] this is very different from *the case in which they were not to exercise any judgment at all over the subject; in which they had stepped out of their path, and taken cognizance of a subject not at all delegated to them. In such an instance their proceedings would have been truly coram non judice, and they trespassers. Here the subject was by law sub judice, and the grievance is a mere error, or mistake by them while in the exercise of a lawful jurisdiction.
2. Another ground that may be taken upon this case is, that the grievance did not arise under the act of the 14th July, by virtue of which the defendant entered. That act ordered a tax (of which the sum collected by the defendant was a part) to be assessed upon dwelling-houses, lands and slaves, according to the valuations and enumerations to be made pursuant to the act of the 9 th of July. Congress by this law referred to, and adopted, the valuations that should be in fact made under the former law, without intending to discriminate between those valuations that should be accurately and truly in all respects made, from those which should be in fact made and returned in pursuance of the first law. The act cf the 14th of July, having adopted the valuations under the law of the 9th of July, and ordered a tax to be laid and collected accordingly, it was a complete authority to the defendant to enter as stated in the case. It would be a doctrine, I apprehend, of most manifest incon *147 venience (if it could be maintained) that if a tax be ordered by the legislature, and to be assessed and collected according to some antecedent valuation, that the collectors of such tax become trespassers, if peradventure there should be an error .in the assessment or in the arrangement of the prior valuations.
In England the annual land tax is to this day apportioned and assessed according to an antecedent valuation made as early as the year 1692, and this practice generally and necessarily prevails, in order to avoid the immense difficulty and labor of frequent valuations (a) The continental assessments were also adopted by the legislature of this state in .the assessment and collection of a state land tax; and in all these cases of reference to- a valuation made, or to be made, by a former law, the true construction is, that the document referred to is not to be assumed as accurate, at the peril of the ministerial officer. The act adopting it necessarily ratifies it as sound, for *the [*104] specific purpose for which it is to be resorted to. And whether this reference be to a valuation under a law uf five days, or five years antecedent to the time of making .he reference, does not appear to me to make any difference in the principle. The gravamen now complained of »y the plaintiffs did not arise under the act by virtue of ivhich the tax was laid and the defendant entered, but under a prior law directing the valuation, and my opinion is, that the last act was a justification to the defendant, and for these reasons the plaintiffs are not'entitled to recover,
Lewis, Ch. J.,
declaring himself of the same opinion,
Ordered judgment for the defendant. ■

 Hard. 480; Buller, 82.

 4 D. & E. 2, 4; 8 D. & E. 468.

 1 H. Bl. 68; 4 T. Rep. 2, 4; 8 do. 468, and the cases cited. Vide 4 W. M., c. 1, and the acts referred to in' 1 H. BL 68.

 October term, 1800.. Since reported. 1 Johns. Cases, 393.

 Laws of United States, VoL IV., p. 168, et seq.

 1 Black Com. 326.