The building occupied by the plaintiff as a young ladies boarding and day school in the city of New York, was taxed by the authorities of that city; and the plaintiff's personal property was seized for the payment of the tax. The plaintiff brought an action against the officer for taking the property, claiming that the building so occupied was exempt from taxation by the 4th section of title 1 of the act entitled "of the assessment and collection of taxes." (1 R.S. 388.)
By that section the following property is exempt from taxation: —
"Subd. 3. Every building erected for the use of a college, "incorporated academy, or other seminary of learning; every "building for public worship; every school-house, court-house "and jail; and the several lots whereon such buildings "are situated, and the furniture belonging to each of "them." The question is, whether the building and lot occupied by the plaintiff is embraced within this enumeration.
The building appears to have been originally planned for three dwelling houses, but shortly after the foundations were laid, an arrangement was made between the proprietor and the plaintiff, that they should be altered and finished as one house, for the purpose of being occupied and used for a school, and that it was altered, finished and used and occupied accordingly from the time of its erection for several years before the tax was laid, and until the time of the trial of the cause in October, 1849. That the school kept by the plaintiff was a seminary of learning, can, upon the facts stated in the bill of exceptions, admit of no doubt; and that the building was erected for that use seems also to be clear. This was not doubted in the court below. But the school was not incorporated and the court below was of the opinion that the legislature intended to exempt incorporated institutions only, and therefore that the building in question was taxable.
But the word "incorporated," as used in the statute, is not necessarily connected with or applied to the words "seminaries *Page 378 
"of learning," and the true construction of the provision does not seem to require that it should be so applied. "Every school-house" is exempted from taxation, whether the school be incorporated or not; and whether erected in pursuance of the act in relation to common schools, or by a single individual as his private property makes no difference. If it be a school-house devoted to that use, it is plainly within the exemption, and cannot be excluded from it by construction. The legislature could not therefore have intended to limit the exemption to buildings erected for institutions belonging to the state, or to those incorporated by law, or to those over which the government exercises the right of visitation or control, or to houses for the common schools. The object of the statute seems to have been, to encourage education generally; and to give the like encouragement to religious instruction, by exempting "every building for public "worship," whether owned by an incorporated society, by voluntary associations, or otherwise.
Whether the building occupied by the plaintiff is "a "school-house" within the meaning of that word in the statute, need not be here determined. It might be difficult to prove that it is not. A seminary of learning is a school, and a school is a seminary of learning. "A school-house" is a house appropriated for the use of schools or for instruction, but usually applied to buildings for subordinate schools and not to colleges. (Webster.) The plaintiff's school was not a college, and her building would seem therefore to fall within the exemption as a school-house. But whether it did or not, the exemption of "every school-house" affords convincing proof that incorporation was not intended to be required for the purpose of bringing institutions similar, if not identical in their character, within the benefit of the exemption.
But perhaps it may be asked, why did the legislature exempt an incorporated academy, and tax an academy not incorporated? The answer is, the legislature has not done so. *Page 379 
An institution, which, if incorporated, would be an academy, according to the prevalent use of that word in this country, is a school, and the building erected for its use is a school-house within the meaning of that word in the statute. In exempting "every school-house" the legislature put no limitation or restriction upon its meaning, and therefore used it in its largest sense. They did not confine it to a building for teaching the letters of the alphabet, or the four ground rules of arithmetic; but they meant a house for any kind of literary instruction and discipline usual in this country.
The statute exempting these literary institutions from taxation is substantially a revision and re-enactment of the third section of the act for the assessment and collection of taxes, passed April 23, 1823. (Laws of 1823, p. 391.) School-houses were exempted by that statute substantially as by the present law. But by the "act respecting the collection of "taxes in the city of New York," passed April 6, 1825, it was enacted that the exemption from taxation of any school under and by virtue of the third section of the act of 23d April, 1823, should not extend or apply to any such buildings or premises in the said city, unless the same should be used exclusively for such purposes, and be exclusively the property of the New York free school society. This amendatory act of 1825 was supposed by the court below to be unrepealed and still in force. But this is a mistake, the act of 1823, "and all acts amending the same," were repealed by the 398th section of the general repealing act. (3 R.S. p. 147, 1st ed.) But whether the act of 1825 was repealed or not, it is plain that its third section became a dead letter by the repeal of the act of 1823; because the third section of the act of 1825 had no other effect whatever than to limit and qualify the operation of the third section of the act of 1823; and when that act was repealed the latter ceased of course to have any effect, whether repealed or not. It cannot operate as a modification of the revised statutes of 1830, because it refers only to the act of 1823, and never had *Page 380 
any effect except in connection with that act; and only while that act remained in force. These statutes therefore have nothing to do with the present question, unless it be to show that the exemption from taxation of "school-houses," "under the act of 1823, was not originally limited to the buildings occupied as such under the common school law; and this indeed is so obvious as to render a reference to them for that purpose unnecessary.
But there is an insuperable objection to the plaintiff's recovery in this action against the collecting officer.
By the act of 1843, chapter 230, the office of collector of taxes is abolished, and that of a receiver of taxes is created. By article 2, of that act, the supervisors are required to cause the assessment rolls of each ward to be delivered to the receiver, with warrants annexed for the collection of the taxes from each person assessed on or before the 25th of September in each year. If the tax remains unpaid to him on the 15th of April following, the receiver is authorized to issue his warrant directed to the sheriff or to any constable or marshal of the city and county, commanding him to levy the tax with interest by distress and sale of the goods of the person against whom the warrant is issued, and to pay the same over to the receiver.
The plaintiff's property was assessed by the officers authorized to make assessments in the ward where the property was situated; the assessment was confirmed by the supervisors; the roll and warrant were delivered to the receiver; the tax remained unpaid until after the day mentioned in the statute, and the receiver issued his warrant to the defendant, a constable, for its collection by distress and sale. It is admitted that the warrant was in due form of law. There is no pretence that anything appeared on its face showing a want of authority in the assessors in making the assessment, in the supervisors in confirming it, or in the receiver in issuing his warrant. The warrant therefore was a perfect justification to the officer in taking the plaintiff's property. The *Page 381 
case of Savacool v. Boughton, (5 Wend. 170,) is conclusive on this point. It was there settled that a ministerial officer is protected in the execution of process, whether the same issue from a court of general or limited jurisdiction, although such court have not in fact jurisdiction of the case, provided it appears on the face of the process, that the court has jurisdiction of the subject matter, and the process in other respects shows no want of authority.
The principle established in the case here cited, is applicable to the case before the court. The assessors in determining whether the plaintiff's property was taxable as a dwelling, or exempt as a seminary of learning, acted judicially and within the sphere of their duty. But being officers clothed with limited powers conferred by statute, their decision on a question in which their own authority to act was involved, was not for all purposes conclusive. The general principle is, that the proceedings of magistrates and officers having special and limited jurisdiction, must bear on their face the evidence of their jurisdiction, or they will be judged invalid; and that in collateral actions their judgments may be questioned and disregarded, if it appear that in fact they had no authority to act in the given case. Perhaps in the present case, if the defendant had sold the plaintiff's property for the tax in question, the legality of the tax might have been an open question between the plaintiff and the purchaser in an action to recover the property. But the assessors having the general authority to make assessments for taxation within the ward in which the plaintiff's property was situated, had jurisdiction of the subject matter of the assessment in question, and the delivery of the assessment roll and warrant to the receiver conferred on him the authority of issuing his warrant to the defendant as one of the constables of the city and county. It was no part of the duty of the defendant, a subordinate officer, to overrule or to dispute the authority of his superiors, unless upon grounds apparent on the face of their mandate. The law does not give him the means of ascertaining *Page 382 
extrinsic facts for this purpose: nor does it attribute to him the capacity for reviewing the assessment on such facts, if they could be ascertained.
The cases of Suydam v. Keyes, (13 John. 444,) Smith v.Shaw, (12 John. 257,) Wise v. Withers, (3 Cranch,
331,) so far as they countenance the contrary doctrine are overruled in Savacool v. Boughton above referred to. The constable must be protected by the law, in the discharge of a duty imposed by law. The plaintiff in this case was not without remedy. Application might have been made in the first instance to the assessors for a review of their assessment, (1 R.S. 393,sec. 22,) and if that failed, the supervisors of the city and county of New York were authorized by the act of May 2d 1844, ch. 250, sec. 2, to correct any erroneous assessment within six months after the return of the assessment rolls.
Whether the error in this assessment might have been corrected on a certiorari to the assessors, or to the supervisors after having made the proper application to them without success, for relief, is not material to the present question. The constable cannot be made responsible on the ground that no relief elsewhere can be had.