ANDREW BARHYTE *v.* SYLVENUS SHEPHERD and ALFRED VOSE.

The office of assessor, in determining what property is subject to, and what is
exempt from, taxation, is judicial; and the assessor, in determining such
questions, acts judicially; and is not liable for errors committed in arriving at
his conclusions upon that subject.

APPEAL from the Supreme Court, sixth district. The
plaintiff sued the defendants before a justice of the peace
in Tioga county, to recover $15, for damages sustained by
having his name put upon the assessment roll for the year
1857, by the defendants, who were then assessors for the
town of Spencer, in that county, and by their refusing to
exempt him from taxation, although he was a minister of the
Methodist Episcopal denomination, and his real and personal
estate were worth less than $1,500, all of which, as the plaintiff
alleged, was well known to the defendants.

The defendants took issue with the plaintiff upon these
allegations.

At the trial, before the justice, the plaintiff proved that he
was a resident of the said town, owning and occupying a
farm there worth $2,500; that he possessed personal prop-
erty worth $500, and owed debts to the like amount; that
the defendants were the assessors for that town, placed his
name on the assessment roll for 1857, and assessed his prop-
erty for taxation at the sum of $1,050. He also proved that
he was regularly ordained as a minister of the Methodist
Episcopal society, and had preached a sermon every Sunday
for several years, laboring on his farm during the other days
of the week; but it did not appear that he had been placed
over any circuit or station by the authority of the society to
which he belonged, although the ministry received their
orders from the annual conference, or the local presiding
elder; nor did it appear that he was in the receipt of any
salary for his services as a minister.

The plaintiff also proved that he presented his certificate
of ordination to the defendants, and demanded to be exempt

from taxation, but they refused to allow his claim, and he was taxed upon the assessed value of his property in the sum of $9.63, and the plaintiff having neglected to pay this amount, the collector sold his property, and made the amount with costs.

Horace Giles, another assessor of the said town, testified that the assessors valued the property of the plaintiff as they did that of any other person, without reference to any deduction.

The plaintiff having rested his case, the defendants moved for a nonsuit, on the ground that they acted judicially and within their jurisdiction, and also on the ground that the plaintiff had not shown that his property was not worth the amount of his assessment, over and above the $1,500 exemption. The justice granted the motion, and the plaintiff excepted to the ruling.

The plaintiff appealed to the County Court, where the judgment of the justice was reversed, with costs.

The defendants thereupon appealed to the Supreme Court, and after hearing at the General Term in the sixth district, the judgment of the County Court was affirmed, with costs; and the defendants now appeal to this court.

The appeal was submitted on printed arguments by the counsel for the respective parties.

*John J. Taylor*, for the appellants.

*B. F. Tracy*, for the respondent.

LEONARD, J.   The statutes of this State provide that all lands and all personal estate within this State shall be liable to taxation, subject to the exemptions thereinafter specified. (1 R. S., § 1, Title 1, chap. 13, part 1, p. 387.) Section 4 of the same title (page 388) declares the exemptions. Subdivision eight of this section includes as exempt, "the personal property of every minister of the Gospel, or priest of any denomination; and the real estate of such minister or priest when occupied by him, provided such real and personal estate do not exceed the value of $1,500."

Section 5 of the same title further provides as follows : "If the real and personal estate, or either of them, of any minister or priest, exceed the value of $1,500, that sum shall be deducted from the valuation of his property, and the residue shall be liable to taxation."

Title second of this chapter relates to the " place and manner in which property is to be assessed." Article second of title second directs "the manner in which assessments are to be made, and the duties of the assessors."

Section eight directs that the assessors shall proceed in each year, between the first days of May and July, to ascertain, by diligent inquiry, the names of all the taxable inhabitants in their respective towns or wards, and also the taxable property, real or personal, within the same.

Section nine directs them to prepare an assessment roll, in which they shall set down in four separate columns, and according to the best information in their power : " 1. In the first column, the names of all the taxable inhabitants in the town or ward. 2. In the second column, the quantity of land to be taxed to each person. 3. In the third column, the full value of such land. 4. In the fourth column, the full value of all the taxable personal property owned by such person, after deducting the just debts owing by him." (pp. 390, 391.)

An examination of the nine several subdivisions of section 4 of title 1, chap. 13, will satisfy any one having some acquaintance with the decisions of the courts, and the difference of opinion often prevailing among judges and lawyers in respect to the questions necessarily arising under these provisions, that the performance of the duties of an assessor, in considering the subject of exemption from taxation, will be one of considerable embarrassment.

It is made their duty, by section 8, referred to above, to ascertain, by diligent inquiry, who are the taxable inhabitants, and the real and personal property which is taxable within their respective towns or wards.

It devolves upon them to determine who are residents ; what real and personal property is exempt by the Constitution of this State or of the United States ; what buildings are exempt

as colleges, academies, seminaries of learning or public worship; who is a minister or priest, and under what circumstances he may claim an exemption, and how much of his real and personal property is subject to taxation.

The question of residence is often one of very great difficulty. It will be found, by a reference to the law reports of this State, that the judges of this court and of the New York Superior Court were not in accord in holding a building exempt as a seminary of learning or taxable as a dwelling. (*Chegaray* v. *Jenkins*, 3 Sandf. S. C., 409 ; 5 N. Y., 376.)

It has been held in that case by the Supreme Court, without reference to the subordinate character of the officer or the difficulty of the question to be determined, and also in another case which will shortly be mentioned, that assessors are personally liable in damages for not correctly ascertaining whether an inhabitant of their town was entitled to an exemption from taxation as a minister or priest.

It will be found that all the reported cases recognize that assessors do act judicially in deciding or determining certain questions which come before them in the performance of their duties, and that when they do so act, they are not liable in an action for errors or mistakes in their decisions. The cases are not uniform in respect to the occasions when these officers do act judicially and when ministerially.

In *Weaver* v. *Devendorf* (3 Denio, 116), it was held that assessors acted judicially in ascertaining the taxable property of the plaintiff, and in estimating its value. The plaintiff was a minister, and the assessors, who were the defendants in the action, refused to make any allowance for his exemption, and assessed him at a higher rate than others. The court says (BEARDSLEY, J.), that "it is not at all material whether the $1,500 were or were not deducted by the defendants, or whether the plaintiff's property was assessed at a higher rate than that of others, for in neither event can this action be sustained." The real estate of the plaintiff in that case exceeded $1,500 in value, and the judge says the defendants had jurisdiction over the property as well as the person of the plaintiff; "and it was their imperative

duty *to ascertain*, as far as practicable, *the taxable property*, and estimate its true value according to their best information, belief and judgment." (p. 119.)

A great number of cases are cited by the learned judge, showing that the law will not allow malice or corruption to be charged in a civil suit against an officer for what he does in the performance of a judicial duty. This rule applies only where the officer has jurisdiction of the particular case. *Prosser* v. *Secor* (5 Barb., 607) was a similar action with the present one. It was prosecuted by a minister against the assessors for not allowing his exemption from taxation, his real and personal estate being under $1,500 in value.

It was held by the Supreme Court, seventh district, that the assessors had no jurisdiction over such persons or their property. It was conceded that the assessment of property was a judicial act, but the court held that the assessors had no jurisdiction to assess where the person or the property was exempt.

It appeared, in that case, that the plaintiff practiced as a physician sometimes, and this fact led the assessors to hold him not entitled to his exemption.

The court seem to have arrived at this decision, because the ninth section referred to above provides for setting down the names of the *taxable inhabitants* only, and not for setting down the names of any others. But how was it ascertained that the inhabitants were or were not taxable except by the same diligent inquiry that is made requisite for ascertaining the taxable property? Why is it conceded that the latter act is judicial, while the former, which is performed by the authority of the same section (8), under precisely the same language, is held not to be judicial and not protected? The subject is not there discussed. It is merely the *ipse dixit* of the learned judge, and he leaves us wholly at a loss to perceive the distinction which makes the performance of one act judicial, while the other is not.

It may be conceded that the assessors are liable when they exceed their jurisdiction, without at all reaching the conclusion arrived at in the case just cited.

*Vail* v. *Owen* (19 Barb., 22) is another case of very similar features to the one under consideration.

The action was brought by a minister of the Gospel against the assessors for assessing his property when he had none not exempt by statute on account of his calling. It was there held that the act was judicial and that the assessors were not liable. The case of *Prosser* v. *Secor* was fully reviewed in this case, which occurred in the eighth district, and the conclusion that assessors have no jurisdiction over such persons as are by law exempt from taxation, is held to be wholly untenable.

*Brown* v. *Smith* (24 Barb., 419) is also a case in point as authority. It was there held that the assessors acted judicially in determining the residence of a person, and that they were not liable for erroneously setting the name of a resident of an adjoining town in the tax list. This decision occurred in the Supreme Court, fifth district.

The plaintiff's land was partially in the town of Plainfield, Otsego county, and partly in Winfield, Herkimer county. The assessors (the defendants) resided in Plainfield. The court say they plainly had jurisdiction of the subject matter, although on the evidence the plaintiff's residence in the one town or the other was by no means clear; and in determining it the assessors acted judicially. They were held not liable to an action, although they erred. The case of *Prosser* v. *Secor* was also referred to and very decidedly disapproved.

The case of *Chegaray* v. *Jenkins* (5 N. Y., 376) was an action by a party claiming exemption from taxation on a building occupied by her as a private school or seminary of learning against the tax collector, who justified under a warrant issued to him in due form of law.

The learned judge who delivered the leading opinion in the case (RUGGLES, J.) says, "The assessors, in determining whether the plaintiff's property was taxable as a dwelling or exempt as a seminary of learning, acted judicially and within the sphere of their duty." The case was not decided upon

this ground, but it is deserving of citation as the opinion of a very eminent judge of great experience and probity.

There is also another case in this court which was twice, in different forms, before it for adjudication, which has been referred to as an authority controlling in the present case. *The People* v. *The Supervisors of Chenango Co.* (11 N. Y., 563) was its first appearance, on an application for a mandamus by the relator, Mygatt, against the supervisors, to compel them to audit and allow a tax which had been assessed against him as a resident, when he was in fact a resident of another county.

Mygatt resided in Chenango county in May, when he was assessed there on his personal property, but removed before July 1st of the same year to Oswego county. This court held that the assessors of Chenango county had no authority to assess the relator, he having removed to another county before the last day when assessments are, by law, to be made; that he had a perfect remedy at law by action against the assessors, and that he was, therefore, not entitled to the writ.

It was said in that case that the assessors " acted without jurisdiction, and that their proceedings were void. In assessing personal property, they had jurisdiction only over residents. I concede (says Judge PARKER) that assessors act judicially. If Mygatt had been a resident when assessed, and they had erred as to the amount, they would not have been liable for error."

It was the opinion of the court that the assessors were liable and that the relator had a legal remedy by action, and he was not therefore entitled to the writ.

The same case again came before this court, and is reported by the title of *Mygatt* v. *Washburn* (15 N. Y., 316).

It was there held that the assessors of Chenango county had no jurisdiction of the person or estate of Mygatt for the purpose of assessing him for personal estate, because the assessment must be regarded, in law, as made on the first day of July, the last day limited by the statute for ascertaining the names of the taxable inhabitants, and on that day he was not a resident of Chenango, but of Oswego county. The

defendant was held to be personally liable for the damage occasioned by the assessment on that ground. That case turned on the question of jurisdiction arising out of the residence of the party assessed, while the present arises out of the claim to be exempt. There is nothing in that case overruling *Weaver* v. *Devendorf*, or that the assessors lose jurisdiction in any case other than that of non-residence. The case cannot be considered a precedent controlling in the present one, for the reason that the plaintiff in this case was a resident, and had real estate which he occupied in the same town where the duty of these defendants, as assessors, was to be performed. He was (aside from his exemption) a taxable inhabitant. Whether his real and personal estate was exempt, was another question, not at all affected by the question of jurisdiction arising out of the place of his residence. The exercise of discretion and sound judgment is as much required to determine what is or what is not exempt under the 4th section above referred to as to ascertain the value of the real and personal estate of the taxable inhabitants. In my opinion, there is no question of jurisdiction involved.

It is clear that, by the effect of the decision of this court in *Mygatt* v. *Washburn*, assessors must determine the question of residence at the peril of personal responsibility in damages in case they shall, by mistake, without fraud or malice even, place the name of a non-resident on the assessment roll. The learned judge who delivered the opinion of the court in that case, while admitting its harshness and severity, places his conclusion wholly upon the ground of the non-residence of the plaintiff in the town where he was assessed for personal estate, whereby the assessor lost jurisdiction.

It is not necessary to extend the application of the rule on any ground of public policy, that I can perceive, so as to include cases of mistake in deciding a claim to exemption, where the person and estate of the party are within the jurisdiction of the assessor. The assessors were not ousted of jurisdiction to decide the claim of exemption while the party was a resident and possessed of property otherwise taxable.

The property was taxable like all other real property in

this State; it was the character of the owner in this case, if anything, which exempted the property, as it was that of the building in the case of the school of Madam Chegaray. The statute devolved the duty of deciding as to the plaintiff's claim upon the assessors, and in performing it, they necessarily acted judicially, and are entitled to protection.

Entering the result of their decision upon the assessment roll cannot be separated from the act of judicially deciding. The assessors cannot refuse to carry into effect what they had decided within their jurisdiction.

In the foregoing discussion I have omitted to refer to the question whether or not the assessors were in error in refusing to allow the plaintiff's claim to exemption, for the reason that the defendants are not liable, although their decision should be held to be erroneous. The defendants had the right, and it was their duty to decide the question before them. It is not for a justice of the peace, nor is it for this court, to review their decision in an action against them.

The duty of determining errors devolves only upon an appellate court, when the review determines the rights of the parties between whom the question arose. That is not the case here.

I am for reversing the judgment of the Supreme and County Courts, and affirming that of the justice of the peace, with costs of the appeals below and in this court.

HUNT, J. The defendants were the assessors of the town of Spencer, in the county of Tioga, during the year 1857, and the plaintiff was a minister of the Gospel attached to the Methodist Episcopal denomination, and residing in the same town. The plaintiff was the owner of a farm in that town, assessed by the assessors, and entered in the assessment roll at the sum of $1,050, and was also the owner and possessor of personal property. At the proper time the plaintiff applied to the assessors, informed them that he was a minister as above stated, and requested the benefit of the exemption provided by the statute. Upon an examination before the assessors, he stated his opinion of the value of

his farm, and that he had some personal property, but not enough in value to equal the debts he owed. He further stated that he personally occupied this farm and worked it six days in the week, by his own hands as well as by hired assistance; that he had been regularly ordained as a minister, and that he preached on the Sunday of each week. The defendants refused to allow his claim to be a minister, on the ground, apparently, that he was also a farmer, and refused to give him the benefit of the statute exemption in favor of a minister of the Gospel. In consequence thereof, a tax was imposed upon the plaintiff's property of $9.63, to pay which, with the expenses of the proceeding, his property was sold. The plaintiff now brings his action against the assessors to recover damages for their refusal to allow the exemption claimed. Upon the trial before the justice, he was non-suited. Upon appeal to the County Court, the justice's judgment was reversed, and upon an appeal to the General Term of the Supreme Court, the judgment of the County Court was affirmed. The defendants now appeal to this court. The case presents but a single question. Can an action be sustained against the assessors of a town for refusing to allow to a minister of the Gospel the exemption from taxation to which he is entitled by statute? The defendants claim that their duty in the premises is judicial, and that they are therefore not liable in an action for damages, although they decided incorrectly. The plaintiff, on the other hand, claims that the duty of the assessors in this respect is ministerial merely, and that they are liable to the damages which result from its improper or willful non-performance.

If the duty to be performed by the defendants in this case was purely ministerial, its negligent or inaccurate performance by them renders them liable for the consequent damages sustained by the plaintiff. If the duty was a judicial one, they are not liable. (*Rochester White Lead Company* v. *City of Rochester*, 3 Comst., 343; *People* v. *Supervisors of Chenango*, 1 Kern., 573; *Mygatt* v. *Washburn*, 15 N. Y., 316; and see authorities, *post*.)

The provisions of the statute respecting. the taxation of property are found at 1 R. S., p. 387, margin; and the pages following.   The first section provides that " all lands and all personal estate within this State, whether owned by individuals or by corporations, shall be liable to taxation, subject to the exceptions hereinafter specified."

· Section four enacts that " The following property shall be exempt from taxation : *   *   *. 3.   Every building erected for the use of a college, incorporated academy or other seminary of learning. *   *   * 7.   The personal estate of any incorporated company not made liable to taxation on its capital, in the fourth title of this chapter. *   *   * 8. . The personal property of every minister of the Gospel or priest of any denomination, and the real estate of such minister or priest when occupied by him, provided such real and personal estate do not exceed the value of one thousand five hundred dollars; and 9. All property exempted by law from execution." Section five provides that " If the real and personal estate, or either of them, of any minister or priest, exceed the value of one thousand five hundred dollars, that sum shall be deducted from the valuation of his property, and the residue shall be liable to taxation."

The statute. respecting the " manner in which assessments are to be made, and the duties of the assessors," enacts that, " between the first days of May and July, in each year, they shall proceed to ascertain, by diligent inquiry, the names of all the taxable inhabitants in their respective towns or wards, and also all the taxable property, real or personal, within the same.   They shall prepare an assessment roll, in which they shall set down, in four separate columns, according to the best information in their power, 1. In the first column, the names of all taxable inhabitants in each town or ward.   2. In the second column, the quantity of land to be. taxed to each person. . 3. In the third column, the full value of such land. 4. In the fourth column, the full value of all the taxable personal property owned by. such person, after deducting the just debts owing by him." (1 R. S., 390.)

The proposition of the statute is, that all lands and personal

property within the State, with certain specified exceptions, are liable to taxation. (1 R. S., 389, § 1.) Taxation of property is the rule; non-taxation is the exception. *All* lands and *all* personal estate comprise the subject of taxation as declared in the statute; and any exemptions or exceptions are to be cut out from the body of the taxable property. Among the exceptions as I have quoted them, are "buildings erected for seminaries of learning." As a rule, all buildings are taxable, and it is the duty of the assessors to include them in the list; but if a particular building is claimed, and is found to have been built for a seminary of learning, it must be stricken from the list. The assessors hear the proof by the statement of the claimant, and decide whether the building was erected absolutely for that purpose, or whether it was erected and used for a dwelling house, and the presence of scholars or boarders is an incident to the main use for which the building was intended, and retain it in, or strike it from the list, as they decide the fact to be.

All personal estate is taxable, as the rule. An association of persons holding discounted paper to the amount of half a million of dollars, are *prima facie* taxable upon this amount of personal property. They, however, ask the assessors to strike it from the list, on the ground that they are an incorporated company not made liable to taxation on their capital. If the assessors profess ignorance, two propositions must be established before them: one of fact, to wit, that they are an incorporated company, which must be proved by production of their charter and proof of action under it; and another of law, that such an incorporation is not liable to taxation on its capital by the fourth title of the tax law. The assessors examine the proof on their list points, and if the claim is sustained, the property is stricken out, as within the exemption of subdivision 7, heretofore quoted. If the proof in their judgment fails on either point, the claim is rejected, and the property remains in the tax list.

Under subdivision 9, property of an individual is assessed as liable to taxation. The party assessed claims that it is exempt from taxation to the amount of $250, and asks that

it should be stricken out as property exempt by law from levy and sale on execution. To effect this result, he must satisfy the assessors' by proof that he is a householder, and they will decide whether he is himself a *bona fide* householder, or whether he is a dependent upon the bounty or benevolence of some other person. He must show that he has a family to support, and the assessors hear the evidence on this point also. He must show that if this assessed property should be taken from him by execution, he would not then have remaining the articles of the value that the law permits him to retain. This evidence usually involves difficult and nice questions both of fact and of law, but it is the duty of the assessors to make the inquiries, to hear the evidence, and to determine the validity of the claim.

And so under the subdivision upon which the present question arises. The plaintiff is a resident of the town of Spencer, having in his occupancy a farm of 147 acres, and owning personal property. The assessors are not bound to know that there is any reason why this property should not be assessed with the other property of their town, or if there may be a right of exemption; they have no means of knowing that the plaintiff would desire to claim the benefit of it. He is, therefore, in the first instance, properly chargeable on the assessment roll with the property owned by him. He may, and in the present case he did, appear before the assessors and claim an exemption or a deduction on two grounds. First, he claimed an abatement from his personal property, on the ground that he owed debts equal to its value, which by another provision of the law entitled him to such deduction. This fact he was bound to establish by oath, and subject to a cross-examination by the assessors; who, after hearing his evidence and deliberating upon it, would decide the question and allow or disallow his claim as the truth should require. He also claimed a deduction on the ground that he was a minister of the Gospel and gave his own evidence on this point, and was cross-examined by the assessors. They disallowed his claim, holding, as I conclude upon the evidence he gave them, that the calling of a minister must

be exclusive, and that his occupation of a farmer during the week days prevented him from claiming the benefit of the deduction allowed to a minister.

In each and all of the cases I have suggested under this statute, the action of the assessors is eminently judicial in its nature. To administer oaths, to hear evidence, to weigh its effect, to compare it with the law, and to decide the question presented, are of the essence of judicial action. To make the figures indicating a deduction, and to make the deduction itself, on the assessment roll, may be conceded to be a ministerial act; but to arrive at the conclusion, by hearing and weighing evidence, judging of its credibility, and comparing the evidence with the provisions of law, that the plaintiff was entitled to a deduction, is as far from a ministerial act as can well be imagined.

The defendants had jurisdiction of the subject matter of their proceeding, and of the person of the party interested. " All real and personal property " is the subject matter of their jurisdiction, for the purpose of taxation. " All taxable inhabitants " of the town are the persons within their jurisdiction. This embraced both the person and the property of the plaintiff, and gave them full authority to adjudicate upon the question presented to them. Property is the subject of taxation, and residents owning it are taxable inhabitants. Whether the individual shall be ultimately taxed is not the question. He may be a taxable inhabitant and not a taxed inhabitant. If he has property within his possession and apparent ownership, he is a taxable inhabitant, that is, an inhabitant liable to be taxed, while by reason of indebtedness of personal exemption, or of being a member of an incorporation of a particular character, the taxation may not actually be imposed.

To be taxable does not imply that a person must be taxed, but that he is in the condition or belongs to the class where, under certain circumstances, he may be taxed. That the plaintiff was ultimately entitled to exemption gives him, therefore, no ground to claim that he was not a taxable inhabitant of the town.

That the action of the defendants in adjudicating upon the plaintiff's claim is judicial, and does not expose them to legal liability for an erroneous decision, is also sustained by the authorities. Such was the statement in *Chegaray* v. *Jenkins* (1 Seld., 381), where, in commenting upon subdivision 3, heretofore quoted, Judge RUGGLES says, " The assessors, in determining whether the plaintiff's property was taxable as a dwelling house, or exempt as a seminary of learning, acted judicially and within the sphere of their duty." In *The People* v. *Supervisors of Chenango* (1 Kern., 573), PARKER, J., says, " In assessing personal property they had jurisdiction only over residents. I concede that assessors act judicially. If Mygatt had been a resident when assessed, and they had erred as to the amount, they would not have been liable for error." In *Weaver* v. *Devendorf* (3 Denio, 117), an action was brought against the assessor for refusing to allow the plaintiff the benefit of the exemption as a minister, was under consideration. BEARDSLEY, J., says, " the act complained of was a judicial determination. The assessors were judges acting clearly within the scope and limit of their authority. They were not volunteers, but the duty was imperative and compulsory, and acting, as they did, in the performance of a public duty, in its nature judicial, they were not liable to an action, however erroneous or wrongful their determination."

The same principle is established in *Henderson* v. *Brown*, (1 Caines, 92). In *Easton and others* v. *Calendar* (11 Wend., 90), which was an action of trespass against the trustees of a school district, and the names of some of the taxable inhabitants were not on the list, the court held that the trustees were not liable; using this language : " The trustees are to determine who are and who are not taxable within the provisions of the statute. The duty of ascertaining the taxable inhabitants is involved in considerable difficulty, and an error in this respect may arise as well from a misjudgment of the law on the part of the officers, as a mistake in fact. They are bound to act and to exercise their best judgment in the apportionment of the taxes, and if they confine themselves

within the limit of the statute, though they may err in point of law or in judgment, they should not be liable either criminally or civilly, if their motives are pure." In *Brown* v. *Smith* (24 Barb. 414), the farm of the plaintiff laid partly in two towns. The plaintiff lived upon his farm, but in which town did not clearly appear. This the assessors decided, and as it ultimately appeared, incorrectly. In an action against them, it was held that their action was judicial, and they were protected. (See also *Vanderhyden* v. *Young*, 11 Johns., 150; *Hill* v. *Sellick*, 21 Barb;, 207; *Harmon* v. *Brotherson* 1 Denio, 537.)

That this action is judicial is also clearly indicated by two expressions of the statute in addition to those I have quoted. First, the names of all the taxable inhabitants of the town are to be ascertained by the assessors, upon "diligent inquiry." This implies an examination and investigation of a judicial character, similar to that undertaken by a grand juror when he takes the oath "you will diligently inquire and true presentment make of all offenses which shall come under your charge." That an individual is personally present in the town is not conclusive evidence that he is a taxable inhabitant. He may be there temporarily, or he may have no property. That an inhabitant is not personally in the town during any part of the months of May or June is not, on the other hand, conclusive evidence that he is not a taxable inhabitant, as he may be temporarily absent. As I have attempted to show heretofore, a liability to taxation constitutes a taxable inhabitant. Who constitute this class bearing all the burdens of the government, must be ascertained and determined by some person or tribunal, and upon some principle. Who are the persons, and what is the principle? The statute answers that it shall be decided by the assessors, and upon their judicial responsibility, after "diligent inquiry" made.

The other expression in this statute to which I refer, is found in section 9, in which the assessors are directed to prepare an assessment roll, in which they shall set down the particular details pointed out, embracing names, quantity and.

value, and this roll shall be prepared " according to the best information in their power." They are to inform themselves, they are to ascertain, by all means within their reach, by oral statements, by written proof, by personal observation and judgment, are to reflect and consider, and finally to adjudicate, according to their best information, and prepare the roll accordingly. This expression, to my mind, strongly imports the power of judicial determination. The case of *Mygatt* v. *Washburn* (15 N. Y., 316), is claimed to be decisive of the present case. This claim is not well founded.

The difference between the present case and that of *Mygatt* v. *Washburn,* in which the assessor was held liable for inserting in the roll the name of Mygatt, and assessing him for $10,000 of personal property, when he was not, in fact, an inhabitant of the town, is found in this, that in that case, the officer had no jurisdiction of the person. Mygatt was not, on the first day of July, an inhabitant of the town of Oxford, and the assessors, therefore, had no jurisdiction to decide that question, whether he was a taxable inhabitant. Not being an inhabitant at all, it was both a legal and physical impossibility that he should be a taxable inhabitant. He was no more subject to their jurisdiction, as a legal proposition, than was the Emperor of China or the King of Abyssinia, and the assessors had no more power to direct the imposition of a tax upon his property than upon that of those distant personages. They had nothing to do with him or with his personal property under any conceivable circumstances. They had no action to take in any direction. This is the precise ground on which the liability of Washburn is placed, both in the case itself and in the case of *People* v. *Supervisors of Chenango* (1 Kern., 563), where the same question is argued and substantially decided. In the latter case, Judge PARKER says : " The assessors acted without jurisdiction, and their proceed-. ings are void. In assessing personal property, they had jurisdiction over residents only. If Mygatt had been a resident when assessed, and they had erred as to the amount, they would not have been liable for error. But, if they had no jurisdiction to act at all, they are liable."

In the present case, I have endeavored to show that the assessors had ample jurisdiction, both over the person of the plaintiff, and of the subject matter of the taxation of his property. That case, therefore, is clearly distinguishable from the present.

The question involved was correctly decided in *Vail* v. *Owen* (19 Barb., 22). The contrary decision in *Prosser* v. *Secor* (5 Barb., 607), must be deemed to be overruled.

The conclusion that I have reached involves no hardship. The assessors decided, erroneously, I think, against the validity of the plaintiff's claim to exemption. He was entitled to a deduction of $1,500, according to the statute. He was not, by their erroneous decision, deprived of all redress. He had a remedy by appeal to the board of assessors when they should meet in August to review their assessments. Time, reflection and subsequent conference might have altered their determination. The remedy by mandamus, to correct the action of the assessors in similar cases, is now of frequent occurrence, and relief could have been obtained by that mode of proceeding. But the plaintiff erred, in my judgment, in seeking his relief by an action against the assessors.

Judgment of County Court and Supreme Court should be reversed and judgment of justice affirmed.

Judgment accordingly; all the judges concurring, except SMITH, J., who dissented.