Dwight, J.
—The action was ejectment for lands in the town of Allegany, Cattaraugus county, based on the allegation of title derived from a deed by the comptroller of lands sold for taxes.
The only question made was that of the validity of the *577 plaintiff’s title. Several objections were made to it. One which we find to be fatal to its validity is that in the assessment, which was the initiative of the proceedings upon which the sale was based; the land in question was assessed as non-resident lands contrary to the requirement of the statute in such case.
The facts were these: The brothers Weston, residents of Portville in the same county, were the owners of a tract of land consisting of lot 3 and the adjoining 100 acres of lot 1 of section 1, range 5 in the town of Allegany. The land in question is a part of the 100 acres. In the year 1858, or earlier, the Westons made a verbal bargain with one Nelson Hooker to get off the timber for them from the whole tract, and for a sale of the land to him, upon that and other consideration, when the timber should have been taken off.
Hooker went on to the tract, about 1858, in pursuance of this agreement; built shanties and stables; got off the timber; made shingles and staves; made a small clearing which he enclosed and cultivated, and lived on the tract until after July 23d, 1864. Nelson Hooker himself lived in a shanty on lot three, but he had a log house and barn on the 100 acres. He kept his teams in that barn, and his brother, who worked for him, lived in the log house. The clearing was partly on lot three, and partly on the 100 acres. These facts, which were undisputed, show that during all the time from 1858, or earlier, till July or August, 1864, Nelson Hooker was the actual occupant of the land here in dispute. The Weston tract was a unit, notwithstanding that it was divided by the imaginary fine between lots one and three, and it is of no consequence on which side of that imaginary line the house or shanty stood in which Nelson Hooker lived. He lived on the tract, and occupied it as a whole.
He was also, during all the time, a resident of the town of Allegany; he did not merely occupy the tract for lumbering, but his household effects and other personal property were there, and that was his home.
The taxes for which the land was sold were levied in 1863, 1864 and 1865, and in each of those years the land was assessed as non-resident lands. This assessment, at least in the years 1863 and 1864, was contrary to law, because, during the whole assessment period of those years, the land was in the actual occupancy of a resident of the town in which the land was situated.
It is unnecessary for us to quote or comment upon the provisions of statute covering the assessment of lands in the respects under enquirv, because they have received ex *578 plicit and authoritative construction at the hands of the court of last resort in the two cases of Buffalo and State Line R. R. Co. v. The Supervisors of Erie County (48 N. Y., 101), Stewart v. Chysler (100 id., 378), and the rule there deducted is precisely applicable to this case.
That rule, as stated by Earle, J., in the former and reitterated by Finch, J., in the latter of the cases mentioned, is that when the owner and occupant of the land both reside in the town where the land is situated it may be assessed to either; when the owner does not reside in the town, but there is an occupant of the land who does, it must be assessed to the occupant; and that it is only where neither owner nor occupant resides in the town, that it can be assessed as non-resident land.
The case of Stewart v. Chrysler, was noticably similar in its facts to the one under consideration. It was an action brought to set aside, as a cloud on the plaintiff’s title, a tax deed of the county treasurer, of lands situate in the city of Syracuse. Finch, J., says, “ It is proven in this case that the plaintiff is the owner of the land assessed and is a nonresident of the state; that the land was actually occupied by one Savage, who resided in the town, using the lot in question for the storage of lumber. It follows that the sole jurisdiction of the assessors was to value the lands against the resident occupant, and so initiate a charge upon him personally. They had no jurisdiction to value the lands as against the owner, since he was a non-resident, nor could they be assessed as non-resident lands since they were not unoccupied. Now no assessment was made against the occupant, which alone was lawful. On the contrary, the lands were valued against the plaintiff, as owner. There was thus a void assessment against the lands of the plaintiff.” And it was held that the plaintiff was entitled to have the deed set aside as a cloud upon her title.
These cases compel the conclusion that the assessment in this case was void, and it follows upon settled principles that all the subsequent steps of procedure, up to and including the sale and deed to the plaintiffs, were also void. By them the plaintiffs took no title to the land in question and the judgment dismissing their complaint must, without considering other objections to the plaintiff’s title, be affirmed.
Judgment affirmed.
All concur, except Haight, J., not voting.