PEOPLE ex rel. D., L. & W. R. R. CO. v. REID.    553

Fifth Department, June Term, 1892.

Macomber and Lewis, JJ., concurred.

Order of County Court of Monroe county appealed from affirmed, with ten dollars costs and disbursements.

THE PEOPLE OF THE STATE OF NEW YORK ex rel. THE DELAWARE, LACKAWANNA and WESTERN RAILROAD COMPANY, Appellant, v. ALEXANDER REID and Others, Assessors, and HENRY WALKER, Supervisor of the Town of York, Respondents.

*Taxation — assessment against a leased railroad in the possession and control of the lessee — residence of the lessee for the purpose of taxation — method of establishing the proper assessed valuation of a railroad.*

In a proceeding taken to review an assessment it appeared that the Delaware, Lackawanna and Western Railroad Company was a foreign corporation incorporated under the laws of the State of Pennsylvania, conducting a large system of railways, including the road of the New York, Lackawanna and Western Railway, which was a New York State corporation with a road extending from Binghamton to Buffalo; that the former corporation had leased the road of the latter for the full term of the latter's corporate existence, and for the full term of any renewal or renewals of the franchise, agreeing to pay certain rentals and all taxes and assessments, and that the former company was in full possession of the leased road.

*Held,* that, for the purpose of an assessment for taxation, the Delaware, Lackawanna and Western Railroad Company, the lessee, was a resident of the town through which the leased railroad passed, and was properly assessed as such.

That although a foreign corporation, yet, in view of the fact that it was operating the leased road, it might for the purposes of taxation have several residences, and was, for this purpose, a resident of the town in question.

What facts are necessary to establish a residence by a corporation, considered.

In order to show that the assessment was unequal the relator called many witnesses to show the value of the farms in the town.   The referee, to whom the matter was referred, in order to reach the assessable value, first divided the rent paid by the lessee to the lessor by the number of miles of the leased road; this sum he capitalized at six per cent; from this capitalization he made deductions

554 PEOPLE ex rel. D., L. & W. R. R. CO. v. REID.

FIFTH DEPARTMENT, JUNE TERM, 1892.

for the cost of equipment, the value of wharfage, cattle and coal yards, and the amount of bonds and mortgages for terminal improvements, the remainder he reported as subject to tax.

*Held,* that this method of arriving at the value of the property subject to taxation was a satisfactory and correct one.

APPEAL by the relator, The Delaware, Lackawanna and Western Railroad Company, from a judgment of the Supreme Court, entered in the office of the clerk of Livingston county on the 12th day of September, 1891, dismissing upon the merits, and with costs, a writ of *certiorari* issued to review an assessment in the town of York, with notice of an intention to bring up for review upon the appeal so much of an order of said court, entered in said clerk's office on the 27th day of October, 1890, as directed that the evidence to be taken under said order, with the opinion of the referee, be returned to the court at a Special Term to be held on the last Monday of February, 1891; also to bring up for review on the appeal so much of an order of said court, entered in said clerk's office on the 6th day of March, 1891, as directed that the relator must close its testimony on or before the 1st day of May, 1891.

The case was tried by the court at the Monroe Special Term in May, 1891.

*Charles J. Bissell,* for the appellant.

*J. B. Adams,* for the respondent.

LEWIS, J.:

This is the proceeding by the relator to review an assessment of so much of the railroad known as the Delaware, Lackawanna and Western Railroad Company as is situated in the town of York, county of Livingston. The assessment sought to be reviewed was for the year 1890, the assessed valuation being $174.960 It was duly referred to a referee to take evidence and report to the court with his opinion, first, as to the actual value of the real property assessed to the relator in the town of York; and, second, as to whether the relator's property was assessed at a higher proportionate valuation than the other real and personal property in the town of York, and, if so, whether the relator has sustained injury by reason of such unequal assessment.

PEOPLE ex rel. D., L. & W. R. R. CO. v. REID.   555

Fifth Department, June Term, 1892.

Upon the report of the referee the issues were brought to trial at a Special Term of the Supreme Court in the city of Rochester; and the court having thereafter duly made and filed its written decision thereon, dated June 29, 1891, wherein it was found as facts that the actual value of the real property which was occupied by the relator in the town of York in the months of June and July, 1890, was the sum of $624,482, and that such property was not assessed at a higher proportionate valuation than the other real and personal property in the town for that year, it was adjudged that the writ of *certiorari* be dismissed. The relator appealed to this court and alleges as the grounds of error, first, that the assessment directly and personally to the relator was without jurisdiction, and the assessment is void. The New York, Lackawanna and Western Railway Company is a corporation organized under the Laws of the State of New York; it constructed and equipped the railroad in question, which extends from the city of Binghamton to the city of Buffalo, and when constructed and equipped the entire road, including the real estate, superstructures, locomotives, rolling-stock, franchises, and, in short, everything pertaining to a fully equipped and furnished railroad, was leased by said corporation to the relator by a written lease dated October 2, 1882, for the full term of the corporate existence of the lessor, and during the full term of any and all renewals of the corporate franchise that might at any time thereafter be made. The relator agreed to operate and manage the road during the life of the lease and pay to the lessor certain rentals therein provided for, and, in addition thereto, the relator agreed to pay and discharge during the life of the lease all taxes and assessments levied or imposed upon the leased property. The relator took possession of the leased property, and it thereupon became a part of its great system of railroads, and at the date of the assessment complained of the relator was in the full possession of the entire road, including the portion thereof in the town of York. The New York, Lackawanna and Western Railway was evidently organized for the purpose of constructing and equipping the road, with the expectation and intention, when that was accomplished, of executing the lease mentioned.

The relator contends that as the New York, Lackawanna and Western Railway is a domestic corporation organized under the laws

of this State, and the owner of the road, the assessment should have been made against that company, and not against the relator, a corporation organized under the laws of the State of Pennsylvania, and operating the railroads solely by virtue of a lease thereof; and contends that the relator was in no sense a resident either of the town of York or the State of New York, and that the assessors had no jurisdiction to assess this property directly to it, and thereby create and charge it with a personal liability for the payment of the tax. If both companies were residents of the town of York at the time the assessment was made, it was proper to assess either; if the owner did not reside in the town and the occupant did, the assessment should have been to the occupant; if neither of them resided in the town, the property should have been assessed as non-resident lands. (*Stewart* v. *Crysler*, 100 N. Y., 382.) The relator contends that the New York, Lackawanna and Western Railway, being the owner of the road in question, was, for the purposes of taxation, a resident of each town and county through which its road passes, and we are referred to the case of the *Buffalo and State Line Railroad Company* v. *Supervisors of Erie County* (48 N. Y., 93), as an authority holding that doctrine. That rule, however, applies only in cases where the corporation is by its agents occupying and operating the road, as stated by EARL, Commissioner, in 48 New York, 101: "A corporation for many purposes lives, moves and has its being in its agents, and wherever they are in possession of its real estate, carrying on its corporate business, it may be supposed to exist and reside, without departing from legal precedents or violating the spirit or letter of the law." The New York, Lackawanna and Western Railroad company's principal place of business was, in the year 1890, and still is, in the city of Binghamton, New York. It was not at that time operating the road; had no agents in the town of York, and, therefore, under the rule above referred to, was not a resident of that town.

The relator was, through its servants and agents, at the time the assessment was made, carrying on its corporate business in that town, and was in the possession of the property assessed. If its being a foreign corporation precludes it from being a resident of the town of York, then the property should have been assessed as non-resident lands. While it is true the relator was incorporated under the laws

PEOPLE ex rel. D., L. & W. R. R. CO. v. REID.     557

Fifth Department, June Term, 1892.

of the State of Pennsylvania, it was operating the railroad in question located in this State. While a natural person can reside in but one place at a time, it is, as we have seen, different with a corporation. It may for some purposes exist and be a resident in different places at the same time, as stated by EARL, J., in 48 New York (*supra*): "While corporations, in their general aspect, are mere ideal existences, without body or soul, yet they will be considered inhabitants, residents, citizens when the general spirit and purpose of the law require it."

The relator, to all intents and purposes, so far as the management and control of the property and franchises of the railroad, was a resident, owner and occupant of the property assessed. It was in the same sense and for the same reasons a resident of the town of York that the New York company would have been a resident of that town had it been then operating the road. Where the owner does not reside in the county in which the land assessed is situated, the same mode of assessment is pursued without regard to whether he be a resident of this or of some other State. We think the relator should be held, for the purposes of taxation, to have been a resident of the town of York, and that the assessment was properly made. To hold otherwise would lead to great embarrassments in the collection of taxes for the support of the government. If, under the circumstances, the property of the company in the town of York must be assessed as non-resident property, it would practically result in the authorities being unable to collect the taxes. Giving the construction we have to the statute, works no injustice to the relator, for whether the property be assessed to it or to the New York, Lackawanna and Western Railway, the relator must ultimately pay any and all taxes lawfully assessed upon the property in question.

The second point made by the appellant is that the finding of the court upon the question of the value of the relator's real property in the town of York was based upon erroneous considerations, and that the finding does not represent the true value of the relator's real property. The hearing before the referee took a very wide range; the testimony taken was very voluminous. It was derived almost entirely from witnesses called by the relator.

After being put into narrative form, and evidently much condensed, it covers more than 400 printed pages. With a view of

558    PEOPLE ex rel. D., L. & W. R. R. CO. v. REID.

FIFTH DEPARTMENT, JUNE TERM, 1892.

establishing that the assessment was unequal, the relator called witnesses to testify as to the value of a very large proportion of the farms in the town of York, the quality of their soil, the kind and condition of the improvements were in great detail investigated. Many citizens were called and subjected to searching examinations as to their personal property, including their securities, their household furniture, etc., with a view of showing what proportion of personal property in the town had been assessed.

The taking of the testimony before the referee extended over a period of seventeen months. After taking this large mass of testimony, the referee adopted a very simple and obviously correct method of arriving at the value of the property in question. The property assessed formed a part of a great railroad. To assess the portion of it passing through the town of York, consisting of a narrow strip of land, with its ties, rails, bridges, depots, etc., ignoring the fact that it formed a part and portion of the entire system of a great railroad, would have been very absurd.

Had the assessments through the entire length of the road been made upon that theory, the assessed valuations of the property would aggregate but a nominal sum, and would result in the road, which as a whole is worth many millions of dollars, practically escaping taxation. Inquiries as to the value of the land for farming purposes afford very little, if any, assistance in the inquiry.

There are many embarrassments and difficulties in applying the usual and familiar rules of assessing property to railroads. Railroad property is of a somewhat anomalous character. The courts have approved, in assessing railroad property, of resorting to the method of estimating its value by its earning capacity; and the situation of the road in question is exceedingly favorable for the adoption of this rule. The road is owned by the New York, Lackawanna and Western Company. It is occupied by the relator, the owner receiving rents for the use of the property. The lease secured to it a permanent rental without any probability of decrease in the rent in the future, but a strong probability of an increase. Under such conditions the rentals would seem to furnish a satisfactory criterion for fixing values.

The referee ascertained from the reports to the Board of Railroad Commissioners the rentals the owner had been receiving for the

period of four years next preceding the year 1890, and found that they amounted during that period, annually, to the sum of $1,470,000; and from the same source learned that, for the year ending June 30, 1890, it received $1,487,333.33. By dividing that sum by the length of the leased road, he found the average rental represented by each mile, which sum he capitalized at six per cent; and, after making proper deductions for the cost of equipping the road, the value of wharfage, cattle and coal yards, coal trestles, and the amount of bonds and mortgages for terminal improvements, he reported that, in his opinion, the portion of the road in the town of York was worth $624,482. The Special Term adopted his conclusions as the most feasible and satisfactory means of arriving at the value of the property. There was much more testimony taken, bearing, as we think, very remotely upon the questions under investigation. There was sufficient evidence to sustain the findings. If, as contended by the relator, the referee was not required to make special findings of fact, that he did so does not concern the relator. The very onerous and important duties performed by the referee were for the purpose of aiding the court in deciding the questions before it. The court was not bound to adopt the findings of fact made by the referee.

We have examined the exceptions to the admission and rejection of evidence argued in the appellant's brief. Had a jury been the tribunal passing upon the questions, the exceptions might be worthy of some consideration. But, considering the nature of the inquiry, and that the evidence was taken for the information of the trial court, and not finding that any evidence was rejected which was material to the subject under investigation, we find nothing in the exceptions calling for a rehearing of the matter.

The judgment and orders appealed from should be affirmed, with costs.

Dᴡɪɢʜᴛ, P. J., and Mᴀᴄᴏᴍʙᴇʀ, J., concurred.

Judgment and orders appealed from affirmed, with costs.