DAVID BELL, Appellant, *v.* AARON F PIERCE et al.,
Respondents.

Plaintiff owned a residence and lived with his family in the city of Buf-
falo, and the only business in which he was engaged was transacted in
that city. He also owned a house and grounds in the town of West
Seneca, where his family spent the summer. During that time he
attended to his business in Buffalo, sleeping at his house there one or
two nights in a week. The other nights he spent with his family. His
wife occasionally went to Buffalo, staying over night. On the 20th
June, 1864, plaintiff's family went to West Seneca, as usual. Defendants,
as assessors of the town of West Seneca, assessed plaintiff's personal
property, and a tax was imposed upon him, levied and collected. Defend-
ants had no knowledge before the delivery of the roll to the supervisor that
plaintiff had or claimed any residence except in West Seneca. In an
action to recover the amount so collected,—*Held* (EARL and GREY, CC.,
dissenting), that plaintiff was, for the purposes of taxation and within
the meaning of the act of 1850, amending the Revised Statutes in regard
to the assessment of taxes upon personal property (chap. 92, Laws of
1850), a resident of the town of West Seneca, that the assessors had
jurisdiction to include his personal property in the assessment roll, and
to determine where his principal business was transacted, and were not
liable for an erroneous decision; that plaintiff, therefore, had no cause
of action.

(Argued January 12, 1872; decided May term, 1872.)

APPEAL from judgment of the General Term of the
Supreme Court in the eighth judicial district, in favor of
defendants, entered upon order denying plaintiff's motion
for a judgment upon verdict, and directing judgment for
defendants.

This action was brought to recover the amount of a tax
levied and collected of plaintiff upon an alleged illegal assess-
ment made by defendants as assessors of the town of West
Seneca, Erie county.

During the year 1864, the defendants were the assessors of
the town of West Seneca. They assessed upon plaintiff, as
a resident of that town, a tax on personal property, which
was thereafter levied and collected by the town collector, out

of the plaintiff's property, and amounted at that time, with the fees of the collector, to $702.45.

In March, 1865, a special bounty tax was also assessed upon said plaintiff, as a resident of the town of West Seneca. The assessment of this tax was, as required by law, levied by the board of supervisors, on the aforesaid assessment roll. This tax, with the interest and fees of the collector thereon, on the fifteenth day of May, 1865, amounted to $350.95, and was on that day collected out of the plaintiff's property.

During the whole of the year 1864, preceding the 20th of June, the plaintiff resided with his family in the city of Buffalo. He owned the house in which he there resided, and had for several years. During the whole of the years 1863, 1864 and 1865, his principal and only business, which was that of an iron founder and machinist, was transacted in said city of Buffalo.

On and for several years previous to the first day of July, 1864, he owned a furnished house and twenty acres of land in said town of West Seneca, and had been in the habit of sending his family there to spend about three months during the warm weather, and they there kept house.

The house in Buffalo was closed, but the plaintiff personally attended to his business in Buffalo during such time, and usually slept at his house there once or twice a week during the stay of his family in West Seneca, but spent the other nights with his family in West Seneca. His wife occasionally, during said time, came into Buffalo and remained with the plaintiff at his house there over night, and had her meals there with the plaintiff, the rest of the family remaining at the house in West Seneca. About the 20th of June, 1864, plaintiff's family went to the house in West Seneca, and remained there, as in previous years. for about three months, and then returned to the house in Buffalo ; and during the summer season, plaintiff was with his family in West Seneca, or at his house in Buffalo, substantially as is above stated to have been his habit in previous years. Defendants had no knowledge, before the delivery of the assessment roll to the

supervisors of the town, that the plaintiff had or claimed to have any residence except in West Seneca, although they knew that he had been residing during that year in Buffalo, and that his family had come to West Seneca only a few weeks previous to July 1, 1864. They gave the statutory notices of the completion of the assessment roll, and of their meetings to correct the same, and no one appeared before them to object to the regularity of the plaintiff's assessment. Plaintiff was not assessed for personal property in the city of Buffalo in the year 1864. Upon trial at Circuit, the court directed a verdict for plaintiff, subject to the opinion of the court at General Term. A verdict was rendered accordingly.

The conclusions of law at General Term were as follows:

That the defendants, as assessors as aforesaid, had jurisdiction to determine whether the plaintiff was taxable in said town of West Seneca, for personal property, at the time they prepared said assessment roll, in 1864, and that their determination on that subject is conclusive.

That both of said taxes were legally assessed against the plaintiff.

That the plaintiff cannot maintain this action, but that the defendants should have judgment on the verdict.

And judgment was directed and entered accordingly.

*Sherman S. Rogers* for the appellant. Defendants are liable for the damages resulting from the tax imposed upon plaintiff. (*Mygatt* v. *Washburn*, 15 N. Y., 316; *People ex rel.* v. *Supervisors Chenango Co.*, 11 id., 563; *Freeman* v. *Kenney*, 15 Pick., 44.) Plaintiff was not a resident of West Seneca. (1 R. S., Edm. ed., 362, marg. page 390, § 5, title 2, art. 1, part 1, chap. 13; *Crawford* v. *Wilson*, 4 Barb., 505.)

*P. G. Parker* for the respondents. Defendants had jurisdiction to assess plaintiff in West Seneca. (*Douglas* v. *Mayor New York*, 2 Duer, 110; *Crawford* v. *Wilson*, 4 Barb., 504;

3 Am. Law Reg., 257; 1 R. S., 5th ed., 908, § 5, 911, § 18; *Vail* v. *Owen*, 19 Barb., 22; *Brown* v. *Smith*, 24 id., 419.) Defendants had jurisdiction and their proceedings were regular and fair. (*Barhyte* v. *Shepard*, 35 N. Y., 238; *Foster* v. *Van Wyck*, 4 Abb. Pr. R., 469; *Swift* v. *City of Poughkeepsie*, 37 N. Y., 511; 43 id., 184; *Morange* v. *Mix*, 44 id., 315; 2 Wait's L. & P., 11; *Rogers* v. *Mulliner*, 6 Wend., 597; *Hoose* v. *Shirrill*, 16 id., 33.)

HUNT, C.   If the General Term was right in holding that the defendants, as assessors, had jurisdiction to determine whether the plaintiff was an inhabitant of West Seneca, taxable for personal property in that town, its judgment was correct.   If in error on that point, its judgment was wrong. In *Barhyte* v. *Shepherd*, this court held that the assessors had jurisdiction to determine whether the plaintiff's property was entitled to exemption for the reason that he was a clergyman.   (35 N. Y., 238.)   In *Chegary* v. *Jenkins*, this court held that the assessors had jurisdiction to determine whether the property sought to be exempt as a seminary of learning was entitled to that exemption.   (5 N. Y., 376.)   In *Weaver* v. *Devendorf*, 3 Denio, 116, the same doctrine was held as in *Barhyte* v. *Shepherd*.   (See also *Easton* v. *Calender*, 11 Wend., 90; *Vanderhyden* v. *Young*, 11 J. R., 150; *Harmon* v. *Brotherson*, 1 Denio, 537.)

These decisions were made upon the law as it stood prior to the passage of this act of 1850.

In each of these cases the assessors had jurisdiction of the person alleged to be taxable, and of the property on which the assessment was sought to be imposed.   Barhyte, for example, was a resident of the town of Spencer.   In that town were located both the real and personal estate, respecting which the question arose.   He was undoubtedly a taxable inhabitant, that is, one of a class liable to taxation under proper circumstances.   So was Madame Chegary a taxable inhabitant of New York.   The persons being taxable inhabitants, and the property in each case being before the assess-

ors, it was their duty to decide whether it came within the exemptions provided by law. The parties making complaint themselves submitted that very question to the assessors. It was their duty to decide it as they understood the law to be. In *Mygatt* v. *Washburn* (15 N. Y., 316), on the other hand, the assessors had no jurisdiction of the person of the plaintiff. He was not a taxable inhabitant, that is, he was not liable to taxation for personal property in the town of Oxford, under any circumstances. The assessors, therefore, had no power to adjudicate upon the question of his taxability, and when they undertook to do so their action was void, and did not protect them from liability.

Under the Revised Statutes the rule is as follows, viz.: "Every person shall be assessed in the town or ward where he resides, when the assessment is made, for *all* the personal estate owned by him." (1 R. S., 390, § 5.) But one assessment can be made upon an individual for personal estate, and that must be in the town or ward where he resides when the assessment is made. In the year 1850 (Laws 1850, chap. 92, p. 142), it was enacted, "that in case any person possessed of such personal estate shall reside, during any year in which taxes may be levied, in two or more counties, towns or wards, his residence, for the purposes and within the meaning of this section (§ 5, *supra*), shall be deemed and held to be in the town, county or ward in which his principal business shall have been transacted." (1 R. S., Edm. ed., 362.)

A new test to determine the fact of residence, which was before unknown, was created by this law. By the fact, as ascertained in this mode, to wit, the place of business, was the liability to taxation determined. The statute assumes that a man may have more than one place of residence at the same time. The liability to taxation for personal property is fixed by the residence on the first day of July in each year. (*Mygatt* v. *Washburn, supra.*) No person can be assessed as a taxable inhabitant of Seneca unless on that day he was a resident of that town. On that day the plaintiff had, with his family, occupied his own house in that town for ten days.

His family remained there for three months continuously, the plaintiff taking a portion of his meals there every day, and spending there five or six nights of each week. He attended daily to his business in Buffalo, taking a portion of his meals at his house there, sleeping there one or two nights of each week, his wife occasionally taking meals at the house with him. The plaintiff, upon this state of facts, was no doubt a voter in Buffalo, and was there liable to military and jury duty. He was a resident of Buffalo, having his domicile in that city. The cases show also that he was at the same time a resident of West Seneca. To establish a residence, requires a less permanent abode than to give a domicile, or even to create an inhabitance. (*Harvard* v. *Gore*, 5 Pick. R., 379; *Guire* v. *O'Daniel*, 1 Binny, 349; *Haggart* v. *Morgan*, 1 Seld., 422.)

The case of *Douglass* v. *The Mayor of New York* was an adjudication upon the statute of 1850. (2 Duer's R., 110.) The plaintiff, Douglass, during the year 1850, and for several years previously, resided in a hired house in the city of New York during the winter and spring, and at a country seat in Queens county during the summer and autumn. In the winter of 1850 he was assessed in the city of New York for personal estate, and a tax was imposed upon the same. In the summer he was assessed for a similar tax in Flushing which he paid. It did not appear that he transacted any business in either place. It was held that, whether his domicile was or was not at Flushing, he was a resident of New York and liable to taxation there. Oakley, Ch. J., says: "It may be quite true that a person can have but one domicile, but it is certain that he may have two residences, for such is the case with every man of fortune, who, like the plaintiff, has a town house and a country seat, in each of which he dwells at different seasons of the year, with the intention of making each his permanent abode for a limited period. (*Frost* v. *Brisbin*, 19 Wend., 11.) The residence of the plaintiff in 1850, and for several succeeding years, was just as certainly in the city during the winter and spring, as

in Flushing during the summer and autumn. He was therefore a resident of the city, liable to be taxed as such when the assessment was made of which he complains."

In *Bartlett* v. *The City of New York* (5 Sand. S. C. R., 44), the question was a similar one, and the like conclusion was reached. It was held that, though a person can have but one domicile, he may have several places of residence, which he occupies in succession. The plaintiff was adjudged to have been a resident of New York and also of Westchester county during the several periods that he abode or dwelt in those counties. It was held that, under the statute of 1850, the plaintiff was rightly adjudged to be a resident of New York, and that the tax was properly imposed.

The books are full of cases defining residence and non-residence under the statutes, subjecting non-residents to arrest and their property to attachment. It would be difficult to reconcile these cases. I do not find any well considered cases where the question has arisen upon the statute providing for the taxation of personal property, other than those I have referred to. I conclude, therefore, that the plaintiff, on the first day of July, 1864, was, for the purposes of taxation, a resident of the town of West Seneca. Being a resident of that town, and having personal property liable to taxation, the assessors had jurisdiction to include that property in the assessment roll of that town. The case comes within the principle of *Barhyte* v. *Shephard* (*supra*), and not within that of *Mygatt* v. *Washburn*, where the assessors had no jurisdiction of the person of the plaintiff, and no right to take any action upon the subject. Where the principal business of the plaintiff was transacted was a matter of fact, to be ascertained by proof and to be settled by judicial deter mination. This determination was to be made by the assessors. It was to be made upon proof presented, or, if none was presented, by the best means of knowledge possessed by them. They are not liable for an erroneous decision of a question which they had jurisdiction to decide.

The judgment should be affirmed, with costs.

EARL, C. (dissenting). By the Revised Statutes, as finally amended by section 2, chapter 176, of the Laws of 1851, it is provided that "every person shall be assessed in the town or ward where he resides when the assessment is made for all personal estate owned by him," etc., "and in case any person possessed of such personal estate shall reside during any year in which taxes may be levied in two or more counties, towns or wards, his residence for the purposes and within the meaning of this section shall be deemed and held to be in the county, town or ward in which his principal business shall have been transacted."

The plaintiff resided most of the year in Buffalo and a portion of the year at his summer residence in West Seneca. All his business was transacted in the former place and none of it in the latter. Therefore, for the purposes of taxation on his personal property he must be taxed in all respects as a resident of the former place, and as if he had not resided any portion of the year in the latter place. The statute fixes his residence.

It has been thoroughly settled by repeated adjudications that assessors have no jurisdiction to assess a person for personal property unless he be a resident of the town, and if they do, they make themselves personally liable to the person assessed for the damage they occasion him. (*People* v. *Supervisors of Chenango*, 11 N. Y., 563; *Mygatt* v. *Washburn*, 15 id., 316; *Barhyte* v. *Shepherd*, 35 id., 238; *Bailey* v. *Buell*, 59 Barb., 158; *Wade* v. *Matheson*, 4 Lans., 158.) It matters not in such a case that the assessors acted in good faith or that there were some facts tending to show that the person resided in their town, or that it was difficult to determine where he resided. To give them jurisdiction he must in law and fact be a resident of the town, and while they are obliged to decide the question of residence where it is a disputed one, they are bound to decide it right or else they will not be protected. To this extent have the decisions gone. This rule of responsibility may be

a hard one, but the law as settled applies it to assessors, and we must uphold it until the legislature sees fit to alter it.

Here, however, there was nothing to embarrass the assessors. They knew or could have known that plaintiff's principal residence was in Buffalo and that he resided in their town but a small portion of the year. It appears that he did no business whatever in their town. Hence there were not even facts enough to call for the exercise of their judgment. They had no more jurisdiction over him than they would have had over any stranger temporarily sojourning in their town. It is not sufficient to give assessors jurisdiction that they find a person in their town when they make the assessment. The jurisdiction does not attach unless he be in fact a resident. They cannot make him a resident by deciding that he is such, and they cannot acquire jurisdiction by determining that they have it.

It matters not that the plaintiff could be taxed for his real estate in West Seneca. The only question is his residence for taxation upon personal property, and that upon the law and the facts was unmistakably Buffalo, and in that place there was jurisdiction to assess him. There could not have been jurisdiction to assess him for personal property as a resident in two distinct localities.

The judgment should therefore be reversed and a new trial granted, costs to abide event.

For affirmance—Lott, Ch. C., Leonard and Hunt, CC.

For reversal—Earl and Gray, CC.

Judgment affirmed.