Wisconsin Central Railroad Co. vs. Lincoln County and others.

WISCONSIN CENTRAL RAILROAD COMPANY VS. LINCOLN COUNTY and others.

*February 1— February 20, 1883.*

CONSTITUTIONAL LAW: TAXATION. *(1) Uniformity in time of assessment. (2) Lands ceasing to be exempt in May, when assessed? (3) Ch. 21 of 1877 construed.*

LIMITATION OF ACTIONS: *(4) Under ch. 334 of 1878. (5) Pleading statute, after default.*

1. A statute providing that personal property shall be assessed for taxation on the 1st day of May, and that real property may be assessed in the same year at any time between May 1st and the last Monday in June, does not contravene sec. 1, art. VIII, of the constitution which requires the rule of taxation to be uniform.

2. Lands which ceased to be exempt from taxation on May 11, 1876, were properly on the assessment roll for that year, and it is immaterial whether they were valued and placed on such roll before or after that date.

3. Ch. 21, Laws of 1877, extended the exemption of the lands mentioned in ch. 314 and ch. 362, P. & L. Laws of 1866 (which had already expired), for the term of three years, in respect to all lands not theretofore or thereafter sold or platted, but subjected the lands affected by such exemption to the payment of taxes theretofore assessed against them.

4. An action to cancel certificates of the sale of land for the taxes of 1876 commenced April 27, 1880, was barred by the limitation prescribed in sec. 7, ch. 334, Laws of 1878. *Clarke v. Lincoln Co.*, 54 Wis., 578.

5. In such case it was not error, upon a default being set aside, to allow the statute of limitations to be pleaded.

APPEAL from the Circuit Court for *Lincoln* County.

The action was commenced April 27, 1880, to cancel certificates of sale of the lands described in the complaint for the unpaid taxes of 1876, and to restrain the defendant, the county clerk, from issuing tax deeds pursuant to such certificates. The complaint alleges that the sales were made and the certificates issued in May, 1877, and that the defendant county is the owner and holder of all of said certificates. It also appears from the complaint that the lands thus sold were part and parcel of the lands granted by Congress to this state by an act entitled "An act granting lands to aid in the construction of certain railroads in the state of Wisconsin," approved May 5, 1864 (13 Stats. at Large, p. 66, ch. 80), and granted by the state by chapters 314 and 362, P. & L. Laws of 1866, to the Winnebago & Lake Superior and the Portage & Superior railroad companies respectively. It also appears that the plaintiff company is the successor in interest of said two railroad companies, and the owner of the lands affected by this action. It is alleged that these lands were assessed as of May 1, 1876, at which time. they were exempt from taxation by virtue of chapters 314 and 362, of 1866, above cited, and also by virtue of ch. 21, Laws of 1877. The provisions of these several acts are sufficiently stated in the opinion. The complaint also alleges various irregularities and breaches of duty by the assessors, the boards of review, and town clerks, in the assessment and equalization of the value of the lands, and in levying town, school district, and county taxes thereon. These need not be specifically stated.

The defendants having failed to answer the complaint within the time allowed by law, and the default having been satisfactorily excused, the court granted leave to the defendant county to interpose an answer, which it accordingly did. The answer denies that the lands described in the complaint were exempt from assessment and taxation in 1876, or that they were assessed as of May 1st, and alleges that they were not assessed until on or about May 15th in that year. It also contains the following defense: "Defendant further alleges that this action was commenced on the 27th day of April, A. D. 1880, and more than nine months after the passage of ch. 334, Laws of 1878, by reason whereof said action is barred."

The plaintiff thereupon moved for judgment on the pleadings, alleging that the answer was "frivolous and insufficient, and did not contain a defense to the action." The court granted the motion, and made the following findings of fact and conclusions of law:

Findings of fact:

"(1) That all the material allegations in the complaint are true; (2) that the plaintiff is a railroad corporation duly incorporated and existing under the laws of the state of Wisconsin; (3) that the plaintiff was, at the time the assessment was made, and still is, the owner in fee of the lands described in plaintiff's complaint, and that said lands are a part of the so-called 'land grant lands,' which were exempted from taxation by chapters 314 and 362 of the private and local laws of 1866; (4) that said lands were assessed, sold, and certificates of sale issued thereon, as alleged in plaintiff's complaint.

Conclusions of law:

"(1) That said lands were exempt by law from sale for nonpayment of the taxes mentioned in plaintiff's complaint; (2) the sale of said lands for nonpayment of taxes was illegal and void, and should be set aside; (3) the certificates of

sale issued thereon are illegal and void, and are a cloud upon the plaintiff's title, and should be canceled; (4) that defendants' answer is insufficient in law, and states no defense to plaintiff's cause of action; (5) that defendants should be perpetually enjoined and restrained from selling or transferring any of said certificates of sale, or from issuing deeds thereon; (6) that the plaintiff is entitled to have and recover judgment herein against the defendants for the relief demanded in the complaint, and for its costs and disbursements in this action. Judgment is therefore ordered accordingly."

Judgment was thereupon duly entered for the relief demanded in the complaint. The defendants appealed from the judgment.

For the appellants there was a brief by *Bump, Hetzel & Canon,* with *J. C. Spooner* and *S. U. Pinney,* of counsel, and oral argument by *Mr. Spooner* and *Mr. Pinney.*

*Edwin H. Abbot,* for the respondent.

Lyon, J. An important if not the controlling question in the case is, Were the lands described in the complaint exempt from assessment and taxation in the year 1876? Chapters 314 and 362, P. & L. Laws of 1866, conferring the land grant of May 5, 1864 (which includes the lands here in question), upon the two railroad companies therein named (to the rights of which said companies the plaintiff company has succeeded), each contains the following provision: " The lands granted or intended to be granted by the provisions of this act to the company hereby created, shall be and hereby are exempt from all assessments and from all taxation whatsoever, for the term of ten years from the taking effect of this act, unless said company shall sooner sell or convey the same; and so much of said lands as shall be sold or conveyed by said company within said ten years shall be subject to assessment and taxation, from time to time, as the same shall be as aforesaid sold and conveyed."

Ch. 314 was published and took effect May 10, and ch. 362, May 9, 1866. Hence the periods of exemption therein specified expired on the 10th and 9th days of May, 1876, respectively. The allegation of the complaint is that the lands were assessed for taxation in the year 1876, as of the 1st day of May. The answer denies this allegation, also denies that the lands when assessed were exempt from assessment, and alleges that the lands were not assessed by the assessor for the purposes of taxation "until on or about the 15th day of May, 1876." The form of both pleadings in this particular may be open to criticism, and each was criticised by the opposing counsel. Applying to both the liberal and reasonable rule of construction which now prevails, we think the complaint sufficiently avers that the assessment was made May 1st; and the answer, that it was not made until after May 10th. But, as will hereinafter be seen, we do not regard these allegations in the pleadings as of any importance. The learned counsel for the plaintiff maintains that the assessment must necessarily have been made on or as of the 1st day of May, under the statutes then in force, and could not lawfully relate to a later date; and inasmuch as the exemption did not expire until May 10th and 9th, no lawful assessment for taxation could have been made in 1876.

The statutes in force in 1876, relating to assessments for taxation, provided that the assessors should proceed to make the assessment on the 1st day of May each year, or as soon thereafter as practicable; that personal property should be assessed as of May 1st in each year, and such assessments should not be affected by any sale or change of location of such property after that date, and that real property might be assessed at any time between the 1st day of May and the time appointed for the sitting of the proper board of review, in each year. Laws of 1868, ch. 130, sec. 20, and ch. 234, Laws of 1876. The time fixed for the meeting of the board of review was the last Monday in June, annually. Although

the statute plainly provided for the assessment of real property at any time before the last Monday in June in each year, counsel for plaintiff maintains that it must be construed as requiring real, like personal, property to be assessed as of May 1st; otherwise, he contends, the provision would be invalid in that it would violate the uniform rule of taxation ordained by the constitution. Art. VIII, sec. 1.

The precise question is, Does a statute which provides that personal property shall be assessed for taxation as of the 1st day of May, while real property may be assessed in the same year any day between May 1st and the last Monday in June, contravene the uniform rule of the constitution?

Absolute uniformity in every detail in the assessment of property is impracticable, if not unattainable. It was said by the late chief justice in *Plumer v. Supervisors*, 46 Wis., 163, that "it is sufficient to satisfy the constitution that the rule of the section provides for the valuation of real property at its full value, and that the assessor must use the best practicable means of ascertaining the value." This was said in answer to an objection that a statute (sec. 1, ch. 334, Laws of 1878) prescribed a method for ascertaining such value different from that prescribed by law for ascertaining the value of taxable personal property.

In the above quotation we find the true reason and scope of the constitutional rule of uniformity. It was ordained to secure intelligent assessment upon uniform principle. To secure this, differences of mere detail in the process of assessment, growing out of the nature of different classes of property, are inevitable. Such differences may tend to promote rather than disturb substantial uniformity in the rule of taxation. The assessment laws furnish illustrations of this proposition. For example, specific chattels, such as horses, cattle, carriages, etc., are assessed as of the 1st day of May. Their value on that day is the rule of assessment. A man may own valuable property of those kinds

during the whole assessment year, but if the property is destroyed on the last day of April, the owner cannot be taxed thereon for that year. On the other hand, a person may own or hold money, bonds, mortgages, or other securities during the same year, and may lose them all in an unfortunate speculation or otherwise in April, so that he has no property of that kind on the 1st of May following. Yet the statute requires that he shall be taxed for that year on the basis of the average value of such property (less his indebtedness) so owned or held by him during the year. R. S., 345, sec. 1056.

Here there is a marked difference in the modes of ascertaining the values of the two kinds of property. In the one case the inquiry is whether the person owns or holds the property on the 1st day of May. If he does not, the property is not assessed to him for taxation, although he may have owned it the day before. In the other case, the inquiry is whether he has owned or held the property at any time during the preceding year, and if he has, assessment follows on the basis of average value during the year, although he may not have a dollar or a dollar's worth of it on the 1st of May.

Another illustration of the same proposition is found in the statute which allows a deduction of debts owing by any person from debts owing to him, in fixing the value of credits for assessment, while no such deduction is allowed in the valuation of any other property. True, the statute puts this right of deduction in the form of an exemption (R. S., 340, sec. 1038, subd. 10), but it results all the same in establishing a basis for the valuation of credits different from that upon which all other values are determined.

We do not recollect to have heard the validity of the above statutes denied or questioned, and do not now perceive any solid grounds for an assault upon them. They were enacted with reference to the inherent qualities and incidents

of the property affected by them, and were intended to promote equality and justice in taxation. They authorize differences in matters of procedure and detail, that there may be intelligent assessment at just and uniform values, which, as we have seen, is the uniform rule of the constitution.

If the legislature may thus provide special modes of determining the value of different kinds of personal property, without contravening the uniform rule of the constitution, why may it not also provide that personal property shall be assessed as of one day, and real property on another day? We find no substantial reason for denying such authority. The legislature enacted that personal property shall be assessed as of May 1st, and real estate may be assessed on any day between May 1st and the last Monday in June. We do not think the different dates of assessment contravene the uniform rule of the constitution, for the difference does not interfere with, but doubtless was intended to promote, honest and intelligent assessment of both classes of property at the full value thereof.

We do not think the averments in the pleadings concerning the time the assessments of plaintiff's lands were actually made are of any importance. The lands are assessed for taxation in the assessment roll of 1876, and if they ceased to be exempt from taxation on the 11th day of May in that year, they are properly in the roll (unless the act of 1877 exempts them), no matter when the assessor placed them there or valued them. The allegation in the complaint that they were assessed as of the 1st day of May seems to be a mere conclusion of law, which would be a correct one if the statute required real estate to be so assessed, but which is incorrect because such is not the requirement of the statute. The averment has no significance; neither has the counter averment in the answer that the assessor acted in the premises on or about May 15th. The material fact is, the lands were assessed for taxation in 1876; properly so, if they were

JANUARY TERM, 1883.          145

Wisconsin Central Railroad Co. vs. Lincoln County and others.

subject to taxation at any time before the fourth Monday in June of that year, otherwise not. This is the doctrine of the following cases in New York, cited by the learned counsel for the defendants: *Mygatt v. Washburn*, 15 N. Y., 316; *People v. Supervisors of Chenango Co.*, 11 N. Y., 563; *Bell v. Pierce*, 51 N. Y., 12.

Having reached the conclusion that the lands described in the complaint were not exempt fom assessment and taxation in 1876, under the exemption clauses contained in the acts of 1866 (ch. 314, sec. 21, and ch. 362, sec. 22), it remains to be determined whether they were so exempted in that year by the act of 1877, ch. 21, which took effect February 19, 1877.

Sec. 1 of the act of 1877 provides that the time of exemption fixed in the acts of 1866 "is hereby extended three years." Sec. 2 states the consideration and condition of the act to be the completion by the plaintiff of its railroad to Lake Superior within the then current calendar year. Sec. 3 provides that the proper officer of the plaintiff company shall make an annual statement to the county clerk by May 1st, "under oath, of all lands previously sold or contracted to be sold, or on which the timber has been previously sold or contracted to be sold, up to the 15th day of April, in the year 1877, and annually thereafter, and all such lands sold or contracted to be sold, or on which the timber has been sold or contracted to be sold, shall be, from the date of such sale or contract, subject to assessment and taxation." Sec. 4 is as follows: "The provisions of this act shall not apply to nor in any manner exempt said lands from the taxes which have been heretofore assessed against them, nor shall this exemption apply to any lands belonging to said company which have heretofore been or may hereafter be platted or laid out in village or town lots, nor to any permanent improvements made upon such lands." Sec. 6 provides that the exemption clause of the act shall be void if the plaintiff fails in the performance of the above condition.

The question on this statute is whether the exception in sec. 4 from the exemption of the act relates to the lands described in the complaint. The argument on behalf of the plaintiff is that the term "said lands," as used in that section, relates to the lands mentioned in sec. 3, which had been sold or contracted to be sold by the plaintiff, and not to unsold lands, except such as may have been platted or laid out in village or town lots.

We cannot concur in this construction of sec. 4. Three classes of lands are contemplated in the act: (1) Lands sold or contracted to be sold; (2) lands laid out in village or town lots; and (3) all lands not included in the other two classes. Lands included in the first class are specially subjected to taxation by the provisions of sec. 3, as they were also by the provisions of the acts of 1866. Those included in the second class were also specially subjected to taxation by the provisions of sec. 4. Both classes were thus, by special provisions, taken entirely out of the exemptions of the act in respect both to past and future taxation. These provisions fully disposed of these two classes of lands, and left only the unplatted and unsold lands, or those included in the third class, to be affected by the retrospective clause or exception in sec. 4, which reads: " The provisions of this act shall not apply to nor in any manner exempt *said lands* from the taxes which have been heretofore assessed against them." Any other construction would render the clause a mere tautology. The plain, obvious construction of the act of 1877 is that it extended the ten years' exemption of the act of 1866 (which had already expired) for a term of three years in respect to all lands not theretofore or thereafter sold or platted, but subjected the lands affected by such exemption to the payment of taxes theretofore assessed against them. We conclude, therefore, that the facts stated in the complaint, without regard to the allegations of the answer, show that the lands in question were subject to assessment and taxation in 1876.

The remaining questions in the case may be readily disposed of. The lands having been subject to assessment and taxation in 1876, the irregularities and illegalities complained of in the assessment are covered by the nine months' limitation in Laws of 1878, ch. 334, sec. 7, which limitation was continued in force by the R. S., 1148, sec. 4976. *Clarke v. Lincoln Co.*, 54 Wis., 578, and cases cited. It is stipulated of record that this action was commenced April 27, 1880. The time limited by sec. 7, ch. 334, Laws of 1878, for the commencement of the action expired December 25, 1878. The answer of the statute of limitations was, therefore, a complete bar to the action. It was not error to open the default and allow the defendant county to plead the statute of limitations. *Capron v. Supervisors of Adams Co.*, 43 Wis., 613, and cases cited. On the undisputed material facts, as disclosed by the pleadings and stipulation, we think the action cannot be maintained. We must, therefore, reverse the judgment of the circuit court, and remand the cause, with directions to that court to dismiss the complaint.

*By the Court.*— Ordered accordingly.