PEOPLE ex rel. WRIGHT et al. v. O'ROURKE et al.

(Supreme Court, Appellate Division, Second Department.   June 21, 1898.).

TAXATION—PLACE OF RESIDENCE.
    If a person establishes a permanent residence in a town, and is there physically present, living in his usual abode, on July 1st, the fact that during the preceding winter he lived for some months at an hotel in a neighboring city, and that afterwards, during the summer, he went to the country for recreation, does not establish that on or before July 1st he had changed his residence from the town, under the tax law (Laws 1896, c. 908, § 8), for it does not show that he has acquired any new residence elsewhere.

Appeal from special term, Westchester county.

Certiorari by the people, on the relation of Gilbert A. Wright and Louise Wright, against John O'Rourke and others, assessors of the town of White Plains.   From an order adjudging the relators to be improperly assessed on personal property, and ordering the assessment to be stricken from the roll, defendants appeal.   Reversed.

Argued before GOODRICH, P. J., and CULLEN, HATCH, and WOODWARD, JJ.

John M. Digney, for appellants.
Wilson Brown, Jr., for respondents.

HATCH, J.   The assessors of the town of White Plains assessed a personal tax against Gilbert A. Wright in the sum of $50,000, and against Louise Wright, his wife, in the sum of $10,000.   They both made application to the board of assessors to strike the said assessments from the rolls, upon the ground that neither relator was a resident of White Plains.   Proper notices of the assessment having

1058       

been given, and a day fixed for hearing complaints, the relators appeared before the board of assessors, and were sworn in substantiation of their claim that they were nonresidents of the town when the tax was levied. From the testimony given by Gilbert Wright it appeared that he had resided in the town of White Plains from November, 1892, to the 15th day of November, 1896, living in a house owned by his wife. On the last-named date, he and his family went to live in a suite of rooms in the Winthrop, a family hotel on 125th street, in the city of New York. The family remained in the hotel until about March 15, 1897, when Wright surrendered the lease of his apartments, and returned to White Plains, taking up his abode in his former place of residence, and continuing therein until about August 1, 1897, when he went, for recreation, with his family, to Watch Hill, and had not, up to the time of his examination, returned to the city of New York for the purpose of residence, but was still absent for pleasure. He has never claimed any other place than White Plains and the city of New York as his residence. During the time that he resided at the Winthrop Hotel he removed none of his furniture from White Plains, and, so far as is disclosed by this record, it there still remains. When he took up his abode at the hotel, he did not register as residing in New York, nor did he report at the hotel office that his residence was such city. He did not vote in the city of New York in 1897, and had not voted there since he took up his residence in White Plains; nor could he say when he had last voted in New York, except that it was just before he came to White Plains. He was asked where his present residence was, and answered: "Well, I claim my home, so far, I suppose, the Winthrop Hotel, 125th street, New York City." At this time he had no lease of any rooms in the hotel, nor had he rented any since the surrender of his apartments, about March 1, 1897. The only right which he had to claim this hotel as his residence is based upon his statement: "I am always able to procure them [rooms] when I go there." He, however, did testify that he went to White Plains about four years prior to 1896, for his health, and under the advice of a physician; that he had recovered his health sufficient to warrant his return to New York; that it was for this reason that he went back, and intended to make such place his residence, and live either in an hotel or a private residence. Up to the time of his examination he had not carried such intention into effect. He has never paid any personal tax in the city of New York, and, so far as appears, has never before been assessed for any, either in the city of New York or White Plains. The relator Louise lives with her husband, and her residence is determined by his. At the time when the assessment was made, the relators were both physically resident of White Plains. The assessors, in the exercise of their authority and from their examination, determined that relators' residence was White Plains; and, after hearing the testimony, they still determined that such place was the proper place of residence of the relators, and that each became subject to tax for personal property in such place.

We think that such determination was correct. Indeed, the assessors could scarcely reach any other conclusion upon the testi-

mony, and fulfill the duty which the law imposed upon them.  By section 8 of the tax law (Laws 1896, c. 908) it is provided:

"Every person shall be taxed in the tax district where he resides when the assessment for taxation is made, for all personal property owned by him, or under his control as agent, trustee, guardian, executor or administrator. * * * When a person shall have acquired a residence in a tax district, and shall have been taxed therein, such residence shall be presumed to continue for the purpose of taxation until he shall have acquired another residence in this state or shall have removed from this state.  The residence of a person on July first shall be deemed his residence for the purpose of assessment and taxation during that year.  If he shall have actually and in good faith changed his residence after July first, and before August first in any year, from one tax district to another, and shall make proof to the assessors at or before their last meeting for the correction of the assessment-roll of such change of residence and that he is assessed in the tax district to which he has removed, his name and the assessment of his personal property shall be stricken from the assessment-roll of the tax district where he resided on July first."

It is beyond debate that the relator's residence for the four years preceding November, 1896, was in White Plains.  He had continuously resided there during this period.  He did not then claim any residence in New York, and had no place of abode therein.  These facts were sufficient to establish, not alone a residence, but a domicile.  Therefore, under the statute, he had acquired a residence in White Plains.  Having acquired such residence, at least for purposes of taxation, he could not escape such a result until he had acquired another residence, or removed from the state.  He did not remove from the state.  Did he acquire another residence?  The only evidence upon this point is that he lived in apartments in an hotel in New York from the middle of November, 1896, to the middle of March, 1897.  He removed no furniture from the house in White Plains during this time; and, when he ceased to live in the hotel, he returned to his former abode, and resided there until he went to Watch Hill, solely for pleasure, and after the tax was assessed.  If he is not now a resident of White Plains, then he has no residence.  He had not been to New York to reside during any of this period; and, according to his testimony, if he did go, he had no place to abide except he made some arrangement after arriving there.  That he could obtain quarters in an hotel is saying no more for him than for any other transient person in New York.  The language of the statute requires that the person seeking to evade the tax must not only show that he has surrendered up one residence, but that he has obtained another.  Clearly, there is nothing to show that at the present time the relators have any other residence than White Plains.  They certainly have no other residence for purposes of taxation, for they are taxed in no other place, and the time expired in which a legal assessment could be made before they physically left White Plains.

If we assume that the relators intend in good faith to reside in New York, it is unavailing, for the very simple reason that they have not carried such intention into effect, and mere intent will not evade the statute.

In Bowe v. Jenkins (Sup.) 23 N. Y. Supp. 548, it is said:

"As a general rule, a person does not gain a new residence except by some change in the place of his abode, accompanied by an intent to acquire such new residence. Jac. Dom. §§ 125–127. A change of abode, without such intent, is generally insufficient; and a general intent without actual change is equally insufficient." People v. Streeter, 24 Wkly. Dig. 95, affirmed 103 N. Y. 652.

Relators' residence at the time when the tax was assessed conferred jurisdiction upon the assessors to make the assessment, and subsequent examination shows that such authority was properly exercised. Bell v. Pierce, 51 N. Y. 12; In re Nichols, 54 N. Y. 62.

There is a class of cases, of which People v. Oswego, 5 Hun, 117, is an illustration, where it is held that, where matters are relied upon to exempt a person from taxation which from their nature are known only to him or his witnesses, statements made by the party or his witnesses cannot be disregarded by the assessors, where there is nothing to materially impair the force of such evidence. Such rule has no application to a case where evidence is submitted which depends for its force upon the weight which shall be attached to it, and from which conflicting inferences may arise. It certainly has no application here, for, upon the evidence of the relator, the assessors were clearly authorized to find that the residence was in White Plains.

It follows that the order should be reversed, and the writ quashed.

Order reversed, with $10 costs and disbursements, and writ of certiorari quashed. All concur.