(40 Misc. Rep. 368.)

PEOPLE ex rel. BEERS v. FEITNER et al., Commissioners of Taxes
and Assessments.

(Supreme Court, Special Term, New York County.   March, 1903.)

1. TAXATION—RESIDENCE.
    Where a person claiming residence in a town in Suffolk county was
    physically present there in July, 1900, and remained there until October,
    1900, and then returned to New York City, and lived there and voted
    there in November, 1900, and was still there on the second Monday of
    January, 1901, when the annual record was open for public inspection, he
    was properly taxed as a resident of New York City, though Laws 1896,
    p. 800, c. 908, § 8, provide that the residence of a person on July 1st
    shall be deemed his residence for the purposes of taxation during the
    year.

Certiorari by the people, on the relation of Lucius H. Beers, trustee
of Laura Astor Delano, against Thomas L. Feitner and others, com-
missioners of taxes and assessments, to review an assessment of per-
sonal property.   Writ dismissed.

Lord, Day & Lord (Henry De Forest Baldwin, of counsel), for
relator.

Geo. L. Rives, Corp. Counsel (A. T. Campbell, Jr., of counsel), for
respondents.

CLARKE, J.   This certiorari is brought pursuant to the tax law
(Laws 1896, p. 795, c. 908) to review the proceedings of the commis-
sioners of taxes in assessing the personal property of the relator, as
trustee, for the year 1901, at the sum of $50,000.   The relator filed a
verified application for the cancellation of the assessment upon the
ground of nonresidence.   The affidavit states:

"I object to said assessment on the ground that I am not a resident of the
city of New York for the purposes of taxation.   I reside at Westhampton
Beach, in the town of Southampton, Suffolk county, New York.   I have re-
sided at said place for several years last past, and had my actual residence
there from about the 1st of June, 1900, to about the first of October, 1900.
After October 1 I came to the city of New York and stayed with my mother
in said city in a house owned by her at No. 35 West Eighty-Second street.
I still have my residence at Westhampton Beach, and hold the same under
a three years' lease.   I expect to move there some time next month.   I was
physically present at said residence at Westhampton Beach on July 1.   I
have never resided in a house that I owned or leased in New York City.
Whenever I have been in New York City I have stayed with my mother."

The return to the writ states that the commissioners ascertained
that the relator resided on January 14, 1901, with his mother at No.
35 West Eighty-Second street, New York, and was physically at
that place on said date, and, further, that he voted in the borough of
Manhattan at the election held in November, 1900.   These facts are
undisputed, and comprise all the evidence presented to the commis-
sioners of taxes, and it is upon this evidence that the court must de-
termine the issue of residence.   The language of the affidavit is open
to criticism for indefiniteness and barrenness of legal proof to support
the general allegations.   The objection that the relator is not a resi-
dent "for purpose of taxation" is a conclusion of law.   The mere

allegation of residence, unsupported by the evidence thereof, is not sufficient. If by "actual residence" the relator means "physical presence" at Southampton, such presence is not conclusive. The relator does not state when the three-years lease at Southampton began, and the allegation is subject to the criticism that it may have commenced after the second Monday in January, 1901. The statement of expected return is evidence of present intention, but does not show past residence. The owning or leasing of a house in New York City is not necessary to residence in New York City which may subject one to taxation in the city, and sojourn with one's mother is no ground for exemption. But the affidavit and the return to the writ present an issue of residence upon the following facts: The relator spent his summer—June to October, 1900—at Southampton. After October 1st he returned to New York City, where he stayed with his mother in a house owned by her at No. 35 West Eighty-Second street. On July 1, 1900, he was physically present at Southampton. On the second Monday of January he was in New York City, and had voted there at the election in the preceding November. The relator relies upon People ex rel. Lord v. Feitner, 78 App. Div. 287, 80 N. Y. Supp. 534. That case is not controlling here. The evidence clearly showed non-residence in New York City. The relator spent the greater part of her time in Lawrence, in a house which she had owned for a number of years. She spent but a short period of time in New York City in an apartment, and then returned to Lawrence. She was actually in Lawrence on July 1st, and she was not in New York City on the second Monday of January. The evidence, therefore, supported her declaration that she continued Lawrence her residence. In the case at bar there is no evidence to support the relator's declaration of residence at Southampton other than the statement that he had his actual residence there during the summer months and was physically present there on July 1st.

It is urged that the allegations are proof of residence at Southampton on July 1st, and that residence on that date determines the place of taxation. By section 8 of the tax law (Laws 1896, p. 800, c. 908) it is provided:

"Every person shall be taxed in the tax district where he resides when the assessment for taxation is made, for all personal property owned by him. * * * The residence of a person on July first shall be deemed his residence for the purpose of assessment and taxation during that year."

Mr. Justice Ingraham, construing this section in People ex rel. Lord v. Feitner, says:

"It is the evident intent of the law that a person shall be taxed on his personal estate in but one place in this state, which shall be the place of his actual residence; and the statute fixes definitely that the residence of the person on the 1st of July shall determine the locality in which the tax shall be assessed for the current year."

He then adds:

"It is quite true that the physical presence of a person on the 1st of July at any particular place does not determine that question. The question is as to the legal residence of the individual at that time."

Where a person spends a portion of the year in New York City and a portion of the year elsewhere, his legal residence for the purpose of taxation is determined by the evidence of his intention to make the one place or the other his legal residence. In this case the fact that the relator voted in New York City is important as evidence of his intention. Before voting, the relator must have stated under oath that he had been a resident of the county of New York for four months prior to the day of election in the first week in November. As the relator did not return to New York until October 1st, the four-months period during which he claimed residence in New York City extended over several months, during which the relator states that he actually resided at Southampton. The fact that a person voted in one place of residence and did not vote in the other place has frequently been considered as evidence of his intention in determining his residence for purposes of taxation. People ex rel. Lawrence v. Barker (Sup.) 17 N. Y. Supp. 788; People ex rel. Blocher v. Crowley, 21 App. Div. 304, 47 N. Y. Supp. 457, affirmed 155 N. Y. 700, 50 N. E. 1120; People ex rel. Wright v. O'Rourke, 32 App. Div. 66, 52 N. Y. Supp. 1057. In Paddack v. Lewis, 59 App. Div. 430, 69 N. Y. Supp. 1, cited by the relator, the question arose under the provisions of the Revised Statutes, which made the place in which a person carried on his principal business the place of taxation. Under the present law the place of taxation is determined by the residence on July 1st merely. The act of voting is no evidence of the place of business, but it is evidence of that intention which determines the place of residence. On the evidence adduced I am of opinion that the relator was not a resident of Southampton on the 1st of July, 1900, and that he resided in the city of New York on the second Monday of January, 1901.

The relator, in his petition, raises the further objection that the assessment was illegal, "because the original entry in the books known as the 'Annual Record' was made at the sum of $15,000, and was subsequently changed to $50,000 without notice to your petitioner." This allegation is insufficient to show illegality. Section 896 of the Greater New York Charter (Laws 1901, p. 381, c. 466) provides that the board of taxes may increase an assessment at any time before the 1st of April, but after the books are opened for correction and review on the second Monday in January it shall not increase any valuation except upon notice to the individual affected by such increase. The relator merely states that a change was subsequently made. He does not show whether the change was made before or after the books were opened, and it may well be that the change was made before that date. The relator is attacking the assessment, and he has failed to sustain the burden of proof. It is, therefore, determined that the relator was properly assessed as a resident of the city and county of New York on his personal estate, and the writ of certiorari must be dismissed, with costs.

Writ dismissed, with costs.